United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 8, 2004

In the

# United States Court of Appeals
## for the Fifth Circuit

m 03-11194

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BRUCE CARNEIL WEBSTER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
m 4:00-CV-1646-Y

Before SMITH, WIENER, and BARKSDALE,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bruce Webster requests a certificate of appealability ("COA") for issues the district court, which granted a COA on two issues, deemed unworthy of collateral review. Because Webster has failed to make a substantial showing of the denial of a constitutional right, we deny his application.

I.

In 1996, a federal jury convicted Webster

of, and sentenced him to death for, three offenses——kidnaping resulting in death, conspiring to kidnap, and using and carrying a firearm during a crime of violence——for his role in the shocking and exceedingly brutal kidnaping, rape, and murder of sixteen-year-old Lisa Rene.[1] We affirmed the conviction and sentence on direct appeal, *see United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), *cert. denied*, 528 U.S. 829 (1999).

In September 2000 Webster filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, and an amended § 2255 motion challenging his conviction and sentence on sixteen grounds in August 2002. The district court rejected Webster's claims and dismissed his petition. *See Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003).

Webster subsequently filed (in the district court) an application for a COA on all grounds raised in his § 2255 motion. In January 2004, the district court issued a COA limited to Webster's claims that (1) his mental retardation renders him ineligible for the death penalty and (2) the evidence was insufficient to warrant the finding that he is not mentally retarded.[2] Webster thereafter filed the instant application with this court expressly limited (as is the government's brief in opposition) to requesting a COA on the issues not certified by the district court.[3]

## II.

A defendant may not appeal a final order in a § 2255 proceeding unless a circuit justice or judge issues a COA. *See* 28 U.S.C. § 2253(c)-(1)(B). To obtain a COA, Webster must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[4] He must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484).

In determining whether to grant a COA, we are limited "to a threshold inquiry into the underlying merit of [Webster's] claims." *Id.* "This threshold inquiry does not require full consideration of the factual and legal bases adduced in support of the claims." *Id.* at 336. Instead, our determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* In death penalty cases, "any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

---

[1] The facts are set forth in detail in *United States v. Webster*, 162 F.3d 308, 317-19 (5th Cir. 1998).

[2] Although the claims on which the district court granted a COA are not presently before us, we note that Webster's claim that the evidence at trial was insufficient to warrant the district court's finding that he is not mentally retarded was raised and rejected on direct appeal. *See id.* at 352-53.

[3] *See United States v. Kimler*, 150 F.3d 429, 431 & n.1 (5th Cir. 1998) (stating that defendant must expressly seek COA on additional issues not certified by district court).

[4] *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

2

### III.

### A.

Before the jury retired for deliberations at the penalty phase, the district court excused juror Albert Fox and elevated an alternate. Webster alleges that the court committed constitutional error in replacing the dismissed juror with an alternate. Because this claim was raised and rejected on direct appeal, *see Webster*, 162 F.3d at 345-47, the district court properly held that Webster was barred from raising it on collateral review.[5] We therefore deny a COA on this issue.

### B.

After imposing a death sentence on the verdict, the district court entered a factual finding that Webster is not mentally retarded and is therefore not immune from the death penalty under 18 U.S.C. § 3596(c).[6] Webster chal

_____

[5] *See, e.g.*, *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions."); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

[6] The district court's factual finding, entitled Factual Finding Regarding Mental Retardation, states, "Webster is not mentally retarded and . . . he possesses the requisite mental capacity to understand the death penalty and why it will be imposed on him. As a result, the defendant Webster is not exempt under 18 U.S.C. § 3596(c) from implementation of the death penalty." Section 3596(c) provides:

> A sentence of death shall not be carried upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that
> (continued...)

lenged this finding on direct appeal, claiming that the statutory scheme precluded factfinding by the court absent the defendant's motion, and that the court acted without notice, thereby depriving him of due process. Reviewing the statutory challenge for plain error as a result of Webster's failure to object, and the due process claim *de novo*, we rejected both claims. *See Webster*, 162 F.3d at 351-52.

Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), Webster sought habeas relief, asserting that he has a due process right to have the jury make the determination as to retardation.[7] The district court denied relief, concluding that *Apprendi* does not retroactively apply to initial habeas petitions under § 2255 and that the absence of mental retardation is not an element of the sentence constitutionally required to be found by the jury. Webster seeks a COA on this claim.

Webster has not made the requisite showing of the denial of a constitutional right in this instance. As an initial matter, the procedural rule announced in *Apprendi* is not retroactively applicable to initial habeas petitions under §

_____

[6](...continued)
person.

[7] In *Apprendi*, 530 U.S. at 490, the Court held that "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." In *Ring*, 536 U.S. at 589, the Court extended the rule announced in *Apprendi* to capital cases: "Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."

2255. *See United States v. Brown*, 305 F.3d 304, 309 (5th Cir. 2002). Although this court has yet to determine whether *Ring* applies retroactively, because "the rule in *Ring* is essentially an application of *Apprendi*, logical consistency suggests that the rule announced in *Ring* is not retroactively applicable." *In re Johnson*, 334 F.3d 404, 405 n.1 (5th Cir. 2003).[8]

Even assuming *arguendo* that *Ring* applies retroactively, "neither *Ring* [nor] *Apprendi* . . . render[s] the *absence* of mental retardation the functional equivalent of an element of capital murder which the state must prove beyond a reasonable doubt." *Id.* at 405 (emphasis added).[9] Thus, because *Apprendi* does not apply retroactively to Webster's initial § 2255 motion, and *Ring*, even if retroactive, does not render the absence of mental retardation an element of the sentence that is constitutionally required to be determined by a jury, Webster has failed to make the requisite showing. We deny a COA on this issue.

## C.

Webster contends that his trial counsel provided ineffective assistance of counsel under the Sixth Amendment. He alleges the following specific deficiencies:

(1) Counsel failed to investigate and present additional evidence demonstrating mental retardation and the extreme abuse Webster suffered as a child;

(2) Counsel failed to investigate and present (for purposes of mitigation and impeachment) evidence of racial discrimination in Webster's Arkansas school district;

(3) Counsel allowed a "breakdown in communication and a dispute over money with the mitigation specialist" to affect the sentencing phase of trial; and

(4) Counsel failed to object to the district court's factual finding regarding mental retardation.

To make a substantial showing of the denial of his Sixth Amendment right to reasonably effective assistance of counsel, Webster must satisfy *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, he must demonstrate "that counsel's performance was deficient," *id.* at 687, and that "the deficient performance prejudiced . . . [his] defense," *id.*

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Judicial scrutiny of counsel's performance must be "highly deferential," *id.* at 689, and we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," *id.* There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To establish prejudice, a petitioner "must

---

[8] *See also Ring*, 536 U.S. at 620-21 (O'Connor, J., dissenting) (opining that *Ring*'s impact would be reduced by *Teague*'s non-retroactivity principle). *See Teague v. Lane*, 489 U.S. 288 (1989).

[9] *See also Ring*, 536 U.S. at 609 (noting that jury finding is constitutionally required for aggravating factors that operate as "the functional equivalent of an element of a greater offense"); *Johnson*, 334 F.3d at 405 ("[T]he absence of mental retardation is not an element of the sentence any more than sanity is an element of an offense.").

4

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The district court's denial of relief is not debatable among jurists of reason, even on threshold review, so we deny a COA on these claims.

### 1.

Webster contends that his trial counsel were ineffective in failing to investigate and present additional mitigating evidence demonstrating mental retardation and the extreme abuse he suffered as a child. The district court denied habeas relief, characterizing this ineffective assistance claim as one of degreeSSi.e., Webster does not allege that counsel utterly failed to present evidence of mental retardation and child abuse but, instead, that counsel were ineffective for failing to investigate and present *enough* of such evidence. After engaging in an exhaustive review of the trial record, the district court determined that defense counsel presented a significant amount of such evidence; and, although more of the same or similar evidence could have been furnished, counsel were not constitutionally ineffective for failing to present more of the same.

Indeed, our review of the trial record confirms that Webster's counsel were far from constitutionally ineffective in investigating and presenting evidence of his mental condition and the abuse he suffered as a child. During the punishment phase, counsel presented lengthy and detailed testimony from four medical experts regarding Webster's mental capacity[10] and the testimony of a fifth medical expert on surrebuttal to critique the methodology used by one of the government's experts in testing Webster's cognitive abilities.

Moreover, counsel presented substantial evidence of the abuse Webster suffered as a child, including testimony from his mother, two of his brothers, two of his sisters, an aunt, a niece, and an ex-girlfriend. All of these witnesses testified about the severe physical and sexual abuse that Webster's father inflicted on his children and his wife (Webster's mother).

---

[10] Raymond Finn, a clinical psychologist, tes- (continued...)

[10](...continued) tified that he had examined Webster on two occasions, first in 1995 and again immediately preceding trial, and believed him to be mildly retarded or in what he termed the educable range of the mentally retarded. Denis Keyes, a certified school psychologist, a Ph.D. in special education, and a professor of special education at the College of Charleston, testified that, based on Webster's scores on I.Q. and adaptive skills tests, he believed Webster to be mentally retarded. Mark Cunningham, a clinical and forensic psychologist, testified that he had examined Webster and had diagnosed him with several psychological disorders, including mild variety mental retardation, anti-social personality disorder, and a non-specific personality disorder involving narcissistic and dependant features.

Robert Fulbright, a clinical neuropsychologist, testified at length about the battery of tests he had administered to Webster, measuring numerous cognitive functions, including, *inter alia*, Webster's attention; concentration; flexibility of thought; problem-solving skills; language functioning; academic abilities; selected sensory and motor functioning; visual-facial skills; and verbal and visual memory. Fulbright stated that Webster's test results indicated significant deficits in cognitive functioning consistent with a finding of mental retardation (or someone who had suffered some type of organic brain injury).

These witnesses recounted graphic and violent stories of sexual abuse; weekly beatings with hoses, fan belts, and extension cords; and various other forms of torture, including electric shock and burning. Even further, counsel presented testimony from an officer of the juvenile court in Arkansas that removed one of Webster's siblings from the home because of abuse.

In light of this substantial body of evidence and the pre-trial investigation its presentation required, Webster's generalized allegation that more evidence of mental retardation and child abuse should have been presented is arguably frivolous. In any event, it is insufficient to demonstrate objectively deficient performance by counsel.[11] Because Webster has failed to make the requisite showing of deficient performance, we need not address the prejudice

portion of the *Washington* inquiry.[12] We deny a COA on this ineffective assistance claim.

2.

Webster faults his trial counsel for failing to investigate and present evidence of racial discrimination allegedly existing in the district where he attended school. Webster claims it is vitally important for counsel to demonstrate that the reason he was not enrolled in special education courses was the district's racially discriminatory practice of not placing black students in such courses even when necessary, and not because he did not qualify. Had such evidence been presented, Webster contends, it would have effectively countered the government's assertion that he is not mentally retarded.

In denying habeas relief, the district court concluded that Webster had failed to establish either prong of the *Washington* standard on this claim. Significantly, the court disagreed with Webster about the salience of the evidence. First, the court observed that the government disputed Webster's claim of mental retardation primarily through the testimony of its medical experts, cross-examination of

---

[11] *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (stating that the deferential review mandated by *Washington* requires courts to be "particularly wary" of claims that counsel failed to present "enough" evidence on a certain issue); *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) ("Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing."); *Prejean v. State*, 889 F.2d 1391, 1398–99 (5th Cir. 1990) ("Although it is possible that [trial counsel] could have produced more of the same type of [mental capacity] evidence . . . such detail is not required by [*Washington*]."); *see also Wilson v. Ozmint*, 352 F.3d 847, 861–62 (4th Cir. 2003) (finding counsel's decision not to present additional mitigating evidence reasonable in light of counsel's belief that "their best mitigation evidence had been presented," and "that the additional evidence would only have detracted from the power of the mitigation evidence that they had already presented").

[12] *See, e.g.*, *Dowthitt*, 230 F.3d at 745 (assuming, *arguendo*, deficient performance and rejecting ineffective assistance claim on prejudice grounds) (citing *Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir. 1989) ("[*Washington*] allows the habeas court to look at either prong first; if either one is found dispositive, it is not necessary to address the other.")); *Murray v. Magio*, 736 F.2d 279, 282 (5th Cir. 1984) ("[I]n addressing [an ineffective assistance] claim, we need not approach the inquiry in any particular order or even address both stages of the inquiry if an insufficient showing is made as to one. A claim may be disposed of for either reasonable performance of counsel or lack of prejudice, without addressing the other.").

Webster's medical experts, and the testimony of other witnesses familiar with Webster both in and out of the prison system. Thus, although certain government witnesses noted the fact that Webster was not in special education courses, this point was merely incidental to the government's case.[13]

Second, the district court noted that Webster's brother Mark testified that most of his brothers *were* in special education classes, and Tony Webster acknowledged that he was in "resource" classes. Surmising that any evidence that the school district did not place black students in special education classes when necessary would have been countered by such testimony, the court concluded that counsel could not be faulted for failing to pursue this track.

Even assuming *arguendo* that counsel's failure to investigate and present such evidence constitutes objectively deficient performance, the district court's conclusion that Webster cannot demonstrate the requisite prejudice is not debatable. Indeed, in rejecting Webster's claim on direct appeal that the evidence was insufficient to warrant the conclusion that he was not mentally retarded, this court noted that "[t]he government presented *substantial* evidence to support the finding." *Webster*, 162 F.3d at 353 (emphasis added). Consequently, the incremental impeachment value, if any, of such evidence does not raise a reasonable possibility that, had the evidence been presented, the outcome would have been different.[14] We therefore deny a COA on this ineffective assistance claim.

3.

Webster contends that his trial counsel were ineffective in allowing a breakdown in communication and a dispute over fees with the mitigation specialist to affect the investigation and presentation of mitigating evidence. Although the factual basis underlying this claim differs from his other ineffective assistance claims, the substance of the claim remains the same: But for this "breakdown," additional mitigating evidence of mental retardation, child abuse, and racial discrimination in school could have been discovered and presented.

Webster's vague and generalized allegations of additional (unspecified) evidence of retardation and extreme child abuse notwithstanding, defense counsel presented substantial quantities of mitigating evidence concerning retardation and child abuse.[15] Webster cannot,

---

[13] E.C. Turner, Linda Monk, and Pat Drewett, a counselor and two teachers, respectively, from the junior high school Webster attended, testified that, in their opinion, Webster was not mentally retarded, and noted that he was not in special education classes.

[14] *See Washington*, 466 U.S. at 694 (explaining that the prejudice standard requires demonstration that, but for challenged performance, "result of the proceeding would have been different").

[15] The jury's findings on the statutory and non-statutory mitigating factors proposed by defense counsel demonstrate the point: All twelve jurors found that Webster "suffered from physical abuse, emotional abuse, and/or parental neglect during his upbringing"; six jurors found that he "grew up in an atmosphere of violence and fear, which has misshaped his perception as to the acceptability or necessity of violent conduct"; four jurors found that he "is or may be mentally retarded" and "has low intellectual functioning"; four jurors found that his level of participation in the commission of the offense "was attributable, at least in part, to the
(continued...)

7

therefore, on threshold review, establish either deficient performance or prejudice for this claim. We therefore deny a COA on this ineffective assistance claim.

### 4.

Webster claims ineffective assistance from counsel's failure to object to the district court's factual finding, discussed above, that he is not mentally retarded and thus is not exempt from the death penalty under § 3596(c). The district court disagreed, concluding that counsel's failure to object to the finding cannot be deemed ineffective assistance when it was not evident, based on the law at the time, that a potential error had occurred.

At the time of trial (which is what matters when assessing counsel's performance),[16] there was no law on who has the authority to decideSScourt or jurySSwhether a defendant is mentally retarded within the meaning of

---

[15](...continued)
influence of one or more of the other participants involved in the commission of this crime"; all but one of the jurors found that he "has the love and support of his family"; four jurors found that other defendants, "equally culpable in the crime, will not be punished by death"; and two jurors found that Webster "would likely adapt to prison life if he were sentenced to life imprisonment," and "can be controlled in a prison setting." *See Webster*, 162 F.3d at 319-20 n.2. In fact, defense counsel presented expert testimony to the point that the district court decided to limit Webster's surrebuttal on cumulativeness grounds. *See id.* at 350-51 (rejecting due process challenge to this limitation).

[16] *See, e.g., Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998) ("The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial.").

§ 3596(c).[17] Thus, there was no legal basis on which trial counsel could conclude (or even suspect) that the court had committed error.[18]

---

[17] *See Webster*, 162 F.3d at 351 ("Webster alleges the factual finding was in contravention of the [Federal Death Penalty Act's] statutory scheme, but the statute fails to address how to ensure that the mandate of § 3596(c) is carried out."); *id.* (noting that "[b]ecause the statute fails to provide guidance, and no case has addressed this issue, the law is not pellucid"); *id.* at 352 ("The statutory scheme simply does not answer who decides this issue . . . .").

[18] We suppose that trial counsel could have advanced the statutory argument Webster made on direct appealSSnamely, that § 3593(b)(3), which provides that the court will act as a fact-finder "upon the motion of the defendant and with the approval of the attorney for the government," precludes any fact-finding by the court absent a motion by defendant. On direct appeal, however, we rejected this argument, noting that this provision refers "only to the determination of the sentence, *Webster*, 162 F.3d at 351, and "in no way implies that all court fact-finding must be on the defendant's motion," *id.* at 351-52.

Trial counsel might also have advanced the other argument made by Webster on direct appeal: that in the absence of a specific statutory scheme, the only logical conclusion is that the jury must be the fact-finder on the issue of mental retardation. Here again, however, we rejected this self-styled "logical" argument, noting that it "suffers from gaps in reasoning." *Id.* Thus, even these arguments, which are based not on any clearly established law, but rather on inferences from the presence and absence other statutory provisions, were deemed meritless on direct appeal, and thus trial counsel's failure to raise them cannot form the basis of a finding of ineffective assistance of counsel. *See, e.g., Kimler*, 167 F.3d at 893 (reasoning that attorney's failure to raise meritless argument
(continued...)

This dearth of authority persists even today; no statutory amendment or judicial decision has addressed whether the mental retardation finding envisioned by § 3596(c) is a question for the court or the jury. Moreover, even if there were a subsequent legal development holding that the jury is the fact-finder required by § 3596(c), the admonition to reviewing courts to "eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time," *Washington*, 466 U.S. at 689, would render Webster's claim meritless.[19]

It follows, then, that counsel cannot be deemed constitutionally ineffective for failing to anticipate a "subsequent development," and Webster cannot rely on the failure to object as

---

[18](...continued)
cannot form basis of ineffective assistance claim).

[19] *See, e.g.*, *Lucas*, 132 F.3d at 1078-79 (rejecting claim of deficient counsel performance "because counsel is not required to anticipate subsequent developments in the law"); *Organ v. Cockrell*, 297 F.3d 349, 360–61 (5th Cir. 2002) (holding that failure to object to supplemental mitigating evidence instruction was not deficient performance before the issuance of *Penry v. Johnson*, 532 U.S. 782 (2001)); *Clark v. Collins*, 19 F.3d 959, 965-66 (5th Cir. 1994) (rejecting claim of deficient performance for failure to object to racially-motivated peremptory strikes before issuance of *Batson v. Kentucky*, 476 U.S. 79 (1986)); *Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992) (same); *Gray v. Lucas*, 677 F.2d 1086, 1096 n.9 (5th Cir. 1982) (holding that failure to object to prosecutor's interjection of future dangerousness through expert testimony did not constitute deficient performance in advance of caselaw discrediting such testimony); *see also United States v. Kleinbart*, 27 F.3d 586, 593 (D.C. Cir. 1994) (holding that failure to appeal jury instruction did not constitute ineffective assistance "[g]iven the unclear state of the law").

a basis for showing deficient performance. Reasonable jurists cannot disagree with the district court's conclusion that counsel were not constitutionally ineffective. We deny a COA on this ineffective assistance claim.

D.

Webster seeks a COA on his claim that the prosecution withheld impeachment evidence in contravention of its due process obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The evidence allegedly withheld is the same material Webster faults his trial counsel for not investigating and presenting to the jury: alleged racial discrimination in the district where Webster attended school and specific evidence of the district's discriminatory practice of failing to place black students in special education classes when necessary. As with his ineffective assistance claim, Webster maintains that disclosure of this evidence would have provided a basis for impeaching government witnesses who testified that he was not mentally retarded and who noted the fact that he was not enrolled in special education classes.

The right to due process is violated where, on request, the government conceals evidence (exculpatory as well as impeachment) that is favorable to the defendant and material to guilt or innocence, irrespective of the good faith of the prosecution. *See id.* at 87–88; *United States v. Bagley*, 473 U.S. 667, 676 (1985); *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Relying on its antecedent conclusion that Webster could not demonstrate prejudice from counsel's failure to discover and present evidence of the school district's discriminatory practices, the district court denied habeas relief on this claim. Jurists of reason cannot find debatable or wrong the rejection of Webster's *Brady* claim.

Even assuming, *arguendo*, that Webster can make the threshold showing that the government suppressed (and was therefore in possession of) this information,[20] Webster's claim fails the threshold showing of materiality. "In assessing the materiality of undisclosed impeachment evidence, 'we must consider the nature of the impeachment evidence improperly withheld and the additional evidence . . . independent of the disputed testimony.'" *Wilson v. Whitley*, 28 F.3d 433, 439 (5th Cir. 1994) (quoting *United States v. Weintraub*, 871 F.2d 1257, 1262 (5th Cir. 1989)).

Although Webster maintains that such evidence could have effectively countered the government's position that he is not mentally retarded, our analysis of his related ineffective

---

[20] Webster attempts to make this showing by vaguely referring to a desegregation lawsuit prosecuted by the Department of Justice against seven Arkansas school districts, including his, in 1970. *See generally United States v. Watson Chapel Sch. Dist. No. 24*, 446 F.2d 933 (8th Cir. 1971) (consolidated appeal regarding, *inter alia*, order requiring district to implement plan for unitary school district, and order finding members of school board guilty of civil contempt for failing to comply with implementation order). Webster maintains that "by virtue of its previous prosecution of the school district, [the government] was in possession of evidence which questioned the credibility of their witnesses." In other words, Webster seeks to impute to the federal prosecutors trying his case knowledge of a desegregation lawsuit filed in the 1970's against his childhood school district, from which he claims some impeachment evidence can be inferred.

Although "the prosecution" for *Brady* purposes does encompass more than the individual prosecutor or group of prosecutors trying the case, and the prosecution may be deemed, in limited circumstances, to be in "constructive possession" of *Brady* material, *see, e.g.*, *Martinez v. Wainwright*, 621 F.2d 184, 186-87 (5th Cir. 1980) (finding no suggestion in *Brady* "that different 'arms' of the gov-
(continued...)

[20](...continued)
ernment are severable entities"); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) (finding prosecution was in possession of criminal history of witness even though no background check was conducted)*; United States v. Deutsch*, 475 F.2d 55, 57-58 (5th Cir. 1975) (finding prosecutor was, for purposes of *Brady*, in possession of information in Postal Service files), there are limits on the imputation of knowledge from one arm of the government to prosecutors. "[T]he prosecution is deemed to have knowledge of information *readily available to it* . . . ." *Williams v. Whitley*, 940 F.2d 132, 133 (5th Cir. 1991) (emphasis added).

If this evidence is deemed "readily available" to the prosecutors for purposes of *Brady*, we are hard-pressed to conceive of any information that would fall outside *Brady*'s constitutional mandate of disclosure. After all, even knowledge of the school district's history of segregation would not lead a reasonable prosecutor where Webster claims it leads, *i.e.*, to question the credibility of school district employees testifying about Webster's mental capacity. Thus, Webster's conclusional allegation of knowledge is not sufficient to demonstrate suppression for purposes of *Brady*.

10

assistance claim obtains equally here.[21]  In the main, the prosecution presented substantial evidence countering Webster's claim of mental retardation, and the government's effort did not depend in any significant respect on Webster's non-enrollment in special education courses.

To the contrary, beyond cross-examining defense experts, the government produced two medical experts who testified that they did not believe Webster was mentally retarded, and, primarily, that the methodology used by the defense experts to gauge his mental capacity was critically flawed.[22]  Moreover, the government presented numerous other witnesses whose testimony contradicted Webster's claim of mental retardation.[23]  Thus, the incremental

impeachment value, if any (given the conflicting testimony by Webster's brothers), of such evidence does not raise a reasonable probability that, had the evidence been disclosed, the outcome would have been different.[24]

In sum, even indulging (on this threshold review) Webster's highly attenuated and suspect attempt to impute knowledge of this evidence to the prosecution, the evidence allegedly withheld is not material.  Because jurists of reason could not find this due process claim debatable, we deny a COA on this issue.

### E.

Webster contends that § 3596(c) is unconstitutionally vague and violates his right to due process because it fails to provide any guidance on (1) whether the issue of mental retardation is to be decided by the judge or jury; (2) whether the decision is to be made pretrial or at sentencing; (3) what is the burden of proof; and (4) what is the relevant standard for a finding of retardation.  Although the district court noted that Webster had failed to raise this claim on direct appeal,[25] the court never

---

[21] *Accord Wilson*, 28 F.3d at 437 n.6 (noting that *Bagley*'s formulation of the materiality standard for *Brady* claims is derived from *Washington*, 466 U.S. at 698).

[22] Both government experts, George Parker and Richard Coons, testified that, in their opinion, Webster had an incentive not to perform well on the cognitive tests administered after he was charged in this case, and pointed to prior cognitive tests taken by Webster on which he scored higher. Parker also testified at length regarding his position that the so-called "Vineland test" administered by defense expert Dr. Keyes was an inappropriate and deceptive measure of Webster's adaptive skills given Webster's lifestyle as a drug-dealer.

[23] These witnesses included correctional officers and fellow inmates who testified that, while incarcerated, Webster engaged in various activities potentially inconsistent with a finding of mental retardation.  For example, he wrote letters to fellow inmates; received letters and newspapers; read aloud from newspapers; wrote request slips for various services; wrote written grievances; sub-
(continued...)

[23](...continued)
mitted names and addresses of people for his visitation list; and on one occasion complained because the change he received from the prison commissary was incorrect.

[24] *See, e.g.*, *Drew v. Collins*, 964 F.2d 411, 419-20 (5th Cir. 1992) (holding that incremental impeachment value from minor inconsistencies between witness' taped and written statements did not satisfy *Brady*'s materiality standard).

[25] Indeed, as we noted, Webster argued on direct appeal that the statute did provide sufficient guidance:  It entrusted the decision to the jury.  As support for this interpretation, Webster pointed to
(continued...)

11

theless proceeded to consider and reject it on the merits.

Webster may not, however, raise this issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the error. *See, e.g.*, *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc). He has neither alleged nor shown cause and prejudice, so this claim cannot form the basis of a substantial showing of the denial of a constitutional right. We deny a COA on this issue.

### F.

Webster avers that the death sentence was applied in his case as a result of a "systematic pattern of racial discrimination" on the part of the government in violation of the Fifth and Eighth Amendments. This claim was raised and rejected on direct appeal.[26] Attempting to

breathe new life into it on collateral review, Webster relies on new statistical evidence compiled by the Department of Justice.[27] Finding that those statistics are identical to those held insufficient to state a *prima facie* case of selective prosecution in *United States v. Jones*, 287 F.3d 325, 332-35 (5th Cir. 2002), the district court rejected this claim.

We agree that the statistics are wholly insufficient to meet the threshold requirement that Webster was singled out in the capital charging decision on the basis of his race, but that others similarly situated were not. Despite citing to new statistical data, Webster has done no more than repeat his claim of error rejected on direct appeal. Because he has failed to make the requisite showing of the denial of a constitutional right, we deny a COA on this issue.

### G.

Webster contends that his due process rights were violated by the presentation of "perjured and damaging testimony" from co-defendants Steven Beckley and Marvin Holloway. He alleges that two post-trial events provide a basis for this claim: first, that Beckley told a correctional officer and an inmate that he had lied at Webster's trial in an effort to improve his standing with the government; and second, that Orlando Hall, another co-defendant, received a letter from Holloway stating that he owed Webster an apologySSa statement Webster cites as evidence that Holloway lied at trial.

---

[25](...continued) 18 U.S.C. § 3593(b), which provides that the court will act as a fact-finder "upon the motion of the defendant and with the approval of the attorney for the government." He asserted that this provision precluded any fact-finding by the court absent the defendant's motion. *See Webster*, 162 F.3d at 351-52.

[26] Webster argued on direct appeal that the district court erred by denying his motion (which was based on alleged racial discrimination in the charging decision) to dismiss the government's notice to seek the death penalty. In rejecting this claim, we concluded that Webster had failed to make the requisite showing that he was singled out for selective prosecution; that his statistical evidence was insufficient to rebut the good-faith presumption on the part of the prosecution; and that the objective circumstances of the crime and the sufficiency and availability of evidence to the prove the elements required constituted proper and legitimate non-discriminatory grounds for seeking the
(continued...)

[26](...continued) death penalty. *See id.* at 333-35.

[27] *See* DEP'T OF JUSTICE: THE FEDERAL DEATH PENALTY SYSTEM: A STATISTICAL SURVEY 1988–2000 (2000).

12

The district court determined that, even if Webster's allegations of perjury were accepted as true, his claim is meritless given his failure even to allege that the government knew that any of the testimony given by Beckley or Holloway was false.[28] Jurists of reason could not find debatable or wrong the district court's rejection of this claim.

"[I]t is established that a conviction obtained through the use of false evidence, *known to be such* by representatives of the State, must fall under the Fourteenth Amendment . . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added)). To establish a due process violation based on the government's use of false or misleading testimony, Webster must show that (1) the testimony in question was actually false; (2) the testimony was material; and (3) the prosecution had knowledge that the testimony was false. *Id.* at 893 (citing *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993)).

As a threshold matter, Webster has failed to identify even a single specific statement made by either witness that is false; instead, he offers only conclusional statements about the ultimate falsity of Beckley's and Holloway's testimony. Moreover, even if Webster's allegations of perjury are accurate, his underlying due process claim is not debatable, because he has failed even to allege that the prosecution knew that any statements made by either witness were false.[29]

Because Webster has failed to identify any statement that is false, and has not even alleged the government knowledge of falsity on which a due process claim is based, he has not made a substantial showing of the denial of his constitutional right to due process. We deny a COA on this issue.

H.

Webster seeks a COA on his claim that his (alleged) mental retardation renders his execution contrary to binding international law. The district court rejected this claim on the merits, concluding that international law affords Webster no greater relief than does domestic constitutional relief under the Eighth Amendment as interpreted in *Atkins v. Virginia*, 536 U.S. 304 (2002). Jurists of reason could not disagree or find wrong the district court's conclusion in that regard.

Reliance on that conclusion is not necessary, however. Because Webster did not raise this claim on direct appeal and has failed to demonstrate cause and prejudice for this default, in either his § 2255 motion or his COA application in the district court or with this court, he may not raise it for the first time on collateral review. *See, e.g.*, *Shaid*, 937 F.2d at

---

[28] The district court also questioned whether Webster had presented any evidence demonstrating that either witness lied at trial. In fact, the court observed that both Beckley's alleged statement and Holloway's letter could plausibly be read as indications that both men were apologetic about testifying against Webster to improve their own liability situations and not as admissions of perjury.

[29] *See, e.g.*, *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995) (holding that allegations failed to establish *prima facie* case of *Napue* violation where defendant "fails to allege any facts suggesting prosecution knew about" contested subject); *see also O'Keefe*, 128 F.3d at 893; *Blackburn*, 9 F.3d at 357.

232. We deny a COA on this issue.

## I.

Webster seeks a COA regarding the district court's denial of his request for discovery.[30] He claims that the court abused its discretion in denying discovery, thereby violating his due process rights.

A habeas petitioner may "invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) (citing *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996)). "A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief . . . ." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994). Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact. *Id.* (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir. 1984)).

Webster's application does not allege a single factual dispute, which, if resolved in his favor, would entitle him to relief.[31] Instead, he merely claims error in the denial of discovery and lists the thirteen grounds for relief on which he seeks to engage in discovery. His application thus reflects a desire to use the habeas corpus discovery mechanism to explore his case "in search of its existence." *Id.* (quoting *Aubet v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). This court does not, however, "sanction fishing expeditions based on petitioner's conclusory allegations." *Rector*, 120 F.3d at 562 (citing *Perillo*, 79 F.3d at 444). Because Webster has failed to identify, with specific allegations, any dispositive factual disputes, we deny a COA on this issue.

The application to extend the COA issued by the district court is in all respects DENIED.

---

[30] During the pendency of his initial § 2255 motion, Webster requested and was granted permission to file a motion for discovery, which the court denied.

[31] *Compare Perillo*, 79 F.3d at 444-45 (finding error in denial of discovery where habeas petitioner had stated a specific factual disputeSSwhether her attorney represented another person involved in the charged crime, and therefore had a conflict of interestSSwhich, if resolved in her favor, would (continued...)

[31](...continued)
entitle her to relief), *with Rector*, 120 F.3d at 562 (affirming denial of discovery request where habeas petitioner had "failed to make at least a *prima facie* showing of what specifically he intends to prove").