**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**September 20, 2007**

**Charles R. Fulbruge III**
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

07-70002

_____

SAMUEL BUSTAMANTE,

                                        Petitioner-Appellant,

                    v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice-
Correctional Institutions Division,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston
No. 4:05-CV-01805

_____

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM[*]

     Petitioner Samuel Bustamante, convicted of capital murder in

Texas and sentenced to death, requests this Court to issue a

Certificate of Appealability (COA) pursuant to 28 U.S.C. §

2253(c)(2).  Bustamante contends that counsel rendered ineffective

assistance during the guilt phase of the trial.  Finding that

Bustamante has made a substantial showing of the denial of a

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

constitutional right, we GRANT the COA.

I.   BACKGROUND

On January 17, 1998, Petitioner Samuel Bustamante, Walter Escamilla, Arthur Escamilla, and Dedrick Depriest planned a robbery.[1]  Walter suggested that the four of them drive to Rosenburg, Texas to go "shopping."  "Shopping" entailed offering a ride to an illegal alien, taking him to a deserted location, beating him and stealing his money and jewelry.  Arthur drove the group in his pickup truck, and they arrived in Rosenburg at 2:00 a.m.  The group spotted Rafael Alvarado, and Bustamante noted that Alvarado's clothing was in good condition and his watch appeared to be gold.

Alvarado offered to pay for a ride across town, and the men agreed.  Arthur and Depriest sat in the truck cab and Bustamante and Walter rode in the truck bed with Alvarado.  After about fifteen minutes, Bustamante asked Walter a question, and Walter said Bustamante should wait.  Bustamante  stood up and stabbed Alvarado ten times with a knife.  Alvarado managed to break free and fall out of the truck to the ground.  Walter shouted at the driver to stop, but by the time the truck stopped, they were unable to find Alvarado after searching for several minutes in the darkness.  As they drove away, the other men called Bustamante crazy.

Subsequently, the police discovered Alvarado's body in a ditch.

---

[1]  The facts underlying the conviction are taken largely verbatim from the Texas Court of Criminal Appeals' opinion. *Bustamante v. State,* 106 S.W.3d 738, 739-40 (Tex. 2003).

He was wearing a watch, a gold necklace, and a ring.  His wallet contained one hundred dollars.  The cause of death was stab wounds to the heart and liver and the attendant loss of blood.

A grand jury indicted Bustamante on the charge of capital murder.  During the guilt phase of the trial, Bustamante's brother was called to the stand, and he refused to testify.  Thus, his brother's written statement was not admitted into evidence.  The statement contained the facts of the crime as related by Bustamante to his brother, and it also referenced previous times Bustamante had gone "shopping."  At the conclusion of the guilt phase of the trial, this statement was inadvertently submitted to the jury with the properly admitted exhibits.[2]  The jurors realized the error and notified the trial judge, who questioned the jurors.  This questioning revealed that three jurors had read the statement or portions of it either silently or aloud.  *Bustamante,* 106 S.W.3d at 742.  Nine jurors had not read it themselves but had heard some or all of it read aloud.  *Id.*  Five jurors said that "they learned nothing new from the statement, three said that they learned that [Bustamante] had 'gone shopping' before, and four said they learned about an incident at a truck stop, after the murder, in which [Bustamante] apparently started to break into another vehicle

---

[2]  Bustamante's brother's statement had been marked States' Exhibit 107, but was never admitted into evidence.  Another piece of evidence subsequently was marked as Exhibit 107 and admitted into evidence.

3

occupied by a sleeping person." *Id.* Additionally, "[o]ne juror said she also learned that [Bustamante] had told his brother before leaving for Rosenburg that he intended to rob someone." *Id.*

The judge overruled Bustamante's motion for mistrial and instructed the jurors not to consider that statement "as evidence of any kind for any purpose at any stage of this trial." The jury found Bustamante guilty as charged. After the sentencing phase, the jury answered the special issues, and the judge imposed a death sentence.

After exhausting his direct appeal and state habeas remedies, Bustamante filed the instant federal habeas petition. The district court denied relief and a certificate of appealability (COA). Bustamante now moves this Court for a COA.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the district court's application of AEDPA to

petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. *Miller-El*, 537 U.S. at 336.

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 327 (citation omitted). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citation omitted).

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Bustamante argues that trial counsel's failure to inspect the

exhibits and discover his brother's statement constituted ineffective assistance. As previously set forth, his brother's statement contained the facts of the crime as related by him to his brother. Bustamante's own confessions to the murder were properly before the jury. Nonetheless, he argues that his brother's statement prejudiced him because it provided that Bustamante had expressed his intention to commit robbery prior to the murder. He contends that, without his brother's statement, there is a reasonable probability that the jurors would have found him guilty of murder but not robbery.

To establish ineffective assistance of counsel, Bustamante must show (1) defense counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We must find that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* The Supreme Court instructs courts to look at the "norms of practice as reflected in the American Bar Association standards" and to consider "all the circumstances" of a case. *Id.* at 688.

A. Deficient Performance Prong

Bustamante contends that counsel's failure to review the exhibits before they were given to the jury constituted deficient performance. While "[j]udicial scrutiny of counsel's performance must be highly deferential," Bustamante can demonstrate deficient

6

performance if he shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89. However, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland,* 466 U.S. at 689).

In support of his contention, Bustamante cites a Texas appellate court's opinion stating "that it is the responsibility of the attorneys for [a]ll parties, as well as of the judge and bailiff, to check the materials to be sent to the jury room." *Houston v. Simon,* 580 S.W.2d 667, 668 (Tex.Civ.App. – Houston [14th Dist.] 1979).[3] Bustamante also relies on a Seventh Circuit case. *Adams Laboratories v. Jacobs Engineering Co.,* 761 F.2d 1218 (7th Cir. 1985). In that case, the jury received exhibits that had not been redacted as ordered. *Id.* at 1227. The complaining party argued that it did not thoroughly examine the exhibits because it was relying on the court's order to redact. The Seventh Circuit found the argument "unpersuasive since it is also their attorney[']s responsibility to thoroughly examine all exhibits before they are submitted to the jury." *Id.* Although *Adams Laboratories* was not a case involving ineffective assistance, that case does support the

_____

[3] It should be noted that *Simon* involved a claim of jury misconduct in a civil case. *Id.* Ultimately, the court found that the inadvertent presence of a copy of the charge with counsel's notes was not an act of misconduct such that harm could be presumed.

7

proposition that it is counsel's duty to examine the exhibits before they are submitted to the jury. We therefore conclude that Bustamante has demonstrated that it is debatable among jurists of reason whether counsel's failure to examine the exhibits constitutes deficient performance.

B.   Prejudice Prong

Bustamante next contends that counsel's failure to discover that his brother's statement was erroneously marked as an admitted exhibit prejudiced him. He argues that the statement prejudiced him by informing the jurors of an extraneous offense that was similar to the instant robbery charge. He further argues that his brother's statement prejudiced him because it provided that Bustamante had expressed his intention to commit robbery prior to the murder. He contends that, without his brother's statement, there is a reasonable probability that the jurors would have found him guilty of murder but not robbery. *Strickland's* "prejudice" prong requires Bustamante to establish that there is a reasonable probability that, but for the deficient performance of his trial counsel, the outcome of his capital murder trial would have been different. *Id.* at 694.

Under Texas law, to convict Bustamante of capital murder, the jurors had to unanimously find beyond a reasonable doubt that he killed the victim in the course of attempting the robbery. Tex. Pen. Code § 19.03(a)(2). Bustamante argues that a juror could have been persuaded that the murder was not connected to the robbery.

8

He asserts that the killing was unanticipated. This is demonstrated, Bustamante argues, by the evidence that the driver of the pickup truck had to be told to slow down and turn around after the victim had fallen from the truck.    He also points to an accomplice's testimony that the killing made no sense.

Resolving any doubts as to whether a COA should issue in Bustamante's favor,[4] we conclude that he has demonstrated that jurists of reason would find it debatable whether the district court correctly found no *Strickland* prejudice.    *Cf. Old Chief v. United States,* 519 U.S. 172, 185 (1997) (explaining that the risk of unfair prejudice is "especially obvious" when a prior similar conviction is admitted).

COA GRANTED.

---

[4]    *Hernandez,* 213 F.3d at 248.