# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 11, 2025

Lyle W. Cayce
Clerk

————————

No. 24-30336

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeremy Esteves,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CR-201-2

———————————————————————

Before Elrod, *Chief Judge*, and King, and Graves, *Circuit Judges*.

Per Curiam:[*]

This appeal stems from the December 18, 2013, armed robbery of a Loomis armored truck at a Chase Bank branch in New Orleans, Louisiana, during which Hector Trochez, a Loomis security guard, was shot and killed. In November 2019, a jury found Jeremy Esteves guilty on multiple counts related to the robbery and shooting.

————————————————

[*]This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30336

Esteves filed a motion for a new trial, asserting the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by withholding relevant impeachment evidence concerning a key Government witness. The district court denied the motion, concluding the evidence was immaterial in light of the record as a whole. Esteves appealed to this court.

In *United States v. Brumfield*, 89 F.4th 506 (5th Cir. 2023), *cert. denied*, 145 S. Ct. 244 (2024), a panel of this court determined the challenged evidence was material under *Brady* and remanded the case to the district court to consider whether Esteves satisfied the suppression and favorability prongs of the *Brady* test.

After two days of evidentiary hearings, the district court denied Esteves' request for a new trial, concluding he had not met his burden to show the Government suppressed the disputed evidence. The court declined to reach the favorability prong. We affirm the decision of the district court.

## FACTUAL & PROCEDURAL BACKGROUND

We discussed the factual background of this case at length in *Brumfield*, so we repeat here only such facts as are necessary to understand our holding. In November 2019, a jury convicted Jeremy Esteves for his role in the 2013 armed robbery of a Loomis truck, during which a Loomis security guard was shot and killed. In October 2021, after the trial but before sentencing, additional impeachment evidence emerged regarding one of the Government's key witnesses, Jamell Hurst. Esteves moved for a new trial, alleging the Government had suppressed the evidence in violation of *Brady*, 373 U.S. at 83, and *Giglio*, 405 U.S. at 150.

No. 24-30336

The purportedly suppressed evidence included, in relevant part:

- Recordings of seven phone calls from Hurst to his mom while he was in jail [in Texas for a probation violation], in which he asked his mom to call the [Federal Bureau of Investigation (FBI)]. Hurst said that FBI Special Agent Rayes told him that he could get his charges dismissed and that Rayes and [Assistant United States Attorney Michael] McMahon [(AUSA McMahon)] told him they could get him out of anything but murder. Hurst's mom reported to Hurst that Special Agent Elmer was working with the district attorney to get him out. [At trial, Hurst testified only to the benefits he hoped to receive from the Government in relation to different pending charges in Baton Rouge.]

- A New Orleans Police Department (NOPD) incident report regarding Hurst's 2013 aggravated burglary charge that states that the victim was "one hundred percent sure" Hurst was the perpetrator. [At trial,] Hurst testified that the charges were dismissed because the witness mistakenly picked him in the photo lineup.

- A Brazoria County, Texas, investigation report showing that Hurst (1) was arrested for possessing 37 stolen credit cards and controlled substances and (2) was later indicted for fraudulently possessing only two credit cards. At trial, Hurst testified only to the latter.

- A Baton Rouge Police Department incident report regarding Hurst's 2014 arrest for battery, which stated that an officer discovered Hurst had an outstanding warrant for burglary issued by the NOPD. The report states that the officer was initially advised that the NOPD wanted Hurst booked, but that the officer was then advised by the NOPD to release Hurst because he was an informant. [This was not testified to at trial.]

3

- A Louisiana Department of Public Safety and Corrections file on Hurst, which states that Hurst had an active warrant issued by Texas and that "Texas indicated that they were coming to get [Hurst]." Another entry states that Special Agent Elmer called on the same date the Texas arrest warrant was issued and asked to speak with Hurst's supervising probation officer. Another earlier entry notes that Special Agent Elmer called in October 2014 seeking Hurst's contact information and stating that he was trying to retrieve "some type of FBI issued equipment." [This was not testified to at trial.]

*Brumfield*, 89 F.4th at 514.

The district court denied the motion for a new trial in March 2022, concluding the new evidence was immaterial in light of the entire trial record and therefore did not satisfy the *Brady* standard. Shortly thereafter, in April 2022, the district court sentenced Esteves to an aggregate sentence of 600-months' imprisonment and entered judgment on the same day. Esteves timely appealed the district court's first denial of his motion for a new trial. *See id.* at 513.

On appeal, a panel of this court concluded that although it was a "close question," the evidence was "sufficient to undermine confidence in the verdict" and was therefore material. *Id.* at 518. Accordingly, the panel remanded Esteves' case to the district court to determine "whether he . . . satisfied the other elements of his claim[;]" *i.e.*, favorability and suppression. *Id.* at 525.

After two days of evidentiary hearings, the district court denied Esteves' second motion for a new trial, concluding he had not met his burden to show the Government suppressed the above-described pieces of evidence. Because the district court's suppression determination was dispositive of

Esteves' *Brady* claim, it declined to reach the favorability prong. This appeal followed.

## STANDARD OF REVIEW

We review denials of motions for a new trial based on a claimed *Brady* violation *de novo*, "while acknowledging that we must proceed with deference to the factual findings underlying the district court's decision." *United States v. Perry*, 35 F.4th 293, 345 (5th Cir. 2022) (citation omitted); *see United States v. Miller*, 520 F.3d 504, 514 (5th Cir. 2008) ("We have cautioned that, as we review *Brady* claims at an inherent disadvantage because of the cold record, we must accord due deference to the trial court's ruling on the alleged *Brady* error." (quotation and citation omitted)).

## DISCUSSION

Under *Brady* and *Giglio*, the government violates a defendant's due process rights by suppressing exculpatory evidence or evidence that could be used to impeach a government witness. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 152-54; *see also United States v. Bagley*, 473 U.S. 667, 676 (1985) (explaining *Brady* extends to "evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest"). To succeed on a motion for a new trial based on newly discovered evidence under *Brady*, the defendant must show: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to [the defendant]; and (3) the evidence was material either to guilt or punishment." *Perry*, 35 F.4th at 345 (quotation and citation omitted). The suppression of *Brady* evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (quoting *Brady*, 373 U.S. at 87).

The suppression prong of the *Brady* test "requires that the prosecution disclose evidence when it is 'of such substantial value to the defense that elementary fairness requires it to be disclosed[.]'" *Floyd v.*

No. 24-30336

*Vannoy*, 894 F.3d 143, 162 (5th Cir. 2018) (quoting *United States v. Agurs*, 427 U.S. 97, 110 (1976)).  This duty of disclosure "exists irrespective of a request from the defense and extends to all evidence known not just to the prosecutors, but to the others acting on the government's behalf in the case, including the police."  *Id.* at 161-62 (quotation and citation omitted).

As a threshold matter, Esteves forfeits any challenge to the district court's conclusion that four of the five categories of evidence described *supra*[1] were not suppressed because he does not reference the evidence or the court's respective determinations in his opening brief.[2]  *See* FED R. APP. P. 28(a)(8)(A) (appellant's argument must contain his or her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *see also Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) (determining inadequately briefed issues were abandoned).  Accordingly, the only properly-preserved issue before our court is whether the district court erroneously concluded the Government did not suppress the recordings of the jailhouse calls between Hurst and his mother.

To establish the government suppressed evidence under *Brady*, the defendant "must show that the prosecution team had access to the evidence." *Summers v. Dretke*, 431 F.3d 861, 874 (5th Cir. 2005).  The extent to which the "prosecution team" includes individuals or agencies beyond the prosecutors themselves depends on a "case-by-case analysis of the extent of

---

[1] (1) NOPD incident report regarding 2013 aggravated burglary charge; (2) Brazoria County report showing Hurst's arrest for possessing controlled substances and 37 stolen credit cards; (3) Baton Rouge Police Department report regarding Hurst's 2014 arrest for battery; and (4) LDPSC file on Hurst, referencing an active warrant issued by Texas.

[2] Additionally, Esteves does not dispute the forfeiture in his Reply after the Government raises the issue, instead arguing that "even if the tacit promises made by Agent Rayes to Mr. Hurst are examined alone, they are material."

interaction and cooperation between" those individuals or agencies and the prosecutors pursuant to agency law. *Avila v. Quarterman*, 560 F.3d 299, 308 (5th Cir. 2009) (quoting *United States v. Antone*, 603 F.2d 566, 570 (5th Cir.1979)). "[I]f a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors." *Id.* at 307 (citing *Antone*, 603 F.2d at 569). That said, "there are limits on the imputation of knowledge from one arm of the government to prosecutors." *United States v. Webster*, 392 F.3d 787, 798 n.20 (5th Cir. 2004). The prosecution is deemed to have constructive knowledge only if the information in question is "*readily available* to it." *Williams v. Whitley*, 940 F.2d 132, 133 (5th Cir. 1991) (emphasis added).

The district court determined that the Government did not suppress the recordings of the jail calls between Hurst and his mother because (1) at the time of Esteves' trial, the prosecution did not have access to the physical recordings and had not listened to them; and (2) to the extent the existence of the calls themselves provided evidence of an undisclosed, tacit agreement between Hurst and the Government, the testimony from the hearing did not indicate that such an agreement existed.

Addressing the physical recordings first, Esteves seems to concede they were not suppressed by the Government. Hurst made the disputed calls in the summer of 2019 when he was incarcerated in the Brazoria County Detention Center in Texas. Esteves does not dispute that at the time of his trial in November 2019, which took place in the Eastern District of Louisiana, Assistant United States Attorney McMahon (AUSA McMahon) did not have access to the calls and had not listened to them. Additionally, Esteves does not allege or show the requisite "interaction and cooperation" between the prosecution and the employees of the Brazoria County Detention Center to make them members of the "prosecution team" under *Brady*. *See Antone*, 603 F.2d at 570. Accordingly, the district court correctly concluded the

physical recordings were not suppressed by the Government because it did not have access to them.

Instead, Esteves argues that Special Agent Rayes, the lead FBI case agent, is the relevant member of the prosecution team under *Brady*, and his correspondence with Hurst and his mother is evidence of a tacit agreement that should have been disclosed under *Brady* and *Giglio*. *E.g.*, *Giglio*, 405 U.S. at 155 ("[E]vidence of any understanding or agreement as to a future prosecution would be relevant to [the witness'] credibility and the jury was entitled to know of it."). Esteves contends that *Kyles* provides the appropriate framework through which to analyze this case. 514 U.S. at 438. In *Kyles*, the Supreme Court held that the prosecution could not escape its broad duty of disclosure under *Brady* simply because it was unaware of information known only to police until after the trial. *Id.* In so holding, the Court noted that "accomodat[ing] the State in this manner would . . . amount to a serious change of course from the *Brady* line of cases" because "procedures and regulations can be established to carry [the prosecutor's] burden and to [e]nsure communication of all relevant information on each case to every lawyer who deals with it." *Id.* (quoting *Giglio*, 405 U.S. at 154). The key aspect of this holding, however, was that the evidence in question was not already disclosed to the defense.

In contrast, here, the testimony elicited at the evidentiary hearings on remand did not establish any tacit agreement beyond that which was already testified to at Esteves' trial. During both direct and cross-examination, Hurst testified that the Government agreed to inform the Baton Rouge District Attorney of Hurst's cooperation after the trial, which is exactly what the evidentiary hearings showed. At the evidentiary hearing, Agent Rayes denied ever promising Hurst that he could get him out of jail, help him get a better deal, or "get him out of anything but murder," but instead told Hurst and his mother that he would pass on Hurst's request to the United States

Attorney's Office.  Relatedly, AUSA McMahon denied ever intervening to have Hurst's criminal charges reduced or dismissed, denied ever being contacted by other law enforcement agencies about Hurst's pending charges, was unaware of anyone who had engineered any deal on Hurst's behalf in exchange for his testimony, and never promised Hurst he "could get him out of anything short of murder."  Additionally, Agent Elmer denied ever trying to help Hurst secure release from jail, intervening to have his criminal charges reduced or dismissed, helping him get a quicker court date, or speaking with Hurst's mother.

The district court determined that Agents Rayes and Elmer and AUSA McMahon were credible, and as noted, our court "proceed[s] with deference to the factual findings underlying the district court's decision." *Perry*, 35 F.4th at 345.  Accordingly, we agree with the district court that "no testimony was elicited supporting Hurst's claims on the recorded calls that he had received assistance from the prosecution team in the past."  Further, insofar as Esteves argues that the dismissal and reduction of the charges Hurst faced in Baton Rouge are additional evidence of the tacit agreement, the evidence shows only that the Government informed the Baton Rouge District Attorney of Hurst's cooperation, which, as previously discussed, was testified to at trial.  In short, because evidence of the agreement—to the extent there was one—was disclosed at trial, the Government did not suppress it.  Therefore, the district court did not err in denying Esteves' request for a new trial, as Esteves' failure to prove the suppression prong is dispositive of his *Brady* claim.  *See, e.g.*, *id.*

## CONCLUSION

For the reasons discussed above, we AFFIRM the district court's denial of Esteves' request for a new trial.