**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL WAYNE HOWELL,

      Petitioner - Appellant,

v.

ANITA TRAMMELL,[*] Warden,
Oklahoma State Penitentiary,

      Respondent - Appellee.

Nos. 02-6324 and 12-6014

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. Nos. CV-99-1803-A and 5:07-CV-01008-D)**

---

Steven M. Presson, Presson Law Office, Norman, Oklahoma (Robert W. Jackson, Jackson & Presson, P.C., Norman, Oklahoma, with him on the briefs in 02-6324), and Paul R. Bottei (Amy D. Harwell and Kelley J. Henry, Office of the Federal Public Defender, Middle District of Tennessee, Nashville, Tennessee, and Steven M. Presson, Presson Law Office, Norman, Oklahoma, with him on the motion in 12-6014), Office of the Federal Public Defender, Middle District of Tennessee, Nashville, Tennessee, for Appellant.

Jennifer J. Dickson, Assistant Attorney General (E. Scott Pruitt, Attorney General of Oklahoma, with her on the supplemental brief, and W. A. Drew Edmondson, Attorney General of Oklahoma, and Jennifer B. Miller, Assistant Attorney General, on the opening brief), Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for Appellee.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Anita Trammell is automatically substituted as the Respondent in this case.

Before **LUCERO**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

This appeal considers two petitions for habeas relief arising from the murder conviction and death sentence of Michael Wayne Howell. Howell's first petition came before us in 2002. After the Supreme Court ruled that states could not impose capital punishment on persons with mental impairments, we abated that petition and allowed Howell to pursue a mental-disability challenge to his sentence in Oklahoma state court.

In 2005, a state court jury found that Howell was not mentally retarded.[1] Howell then filed a second petition, alleging seventeen grounds for relief from his mental-disability trial, in addition to the five grounds remaining from his first petition that were never considered by this court.

_____

[1] We acknowledge that "[i]n 2006, the American Association on Mental Retardation [] changed its name to the American Association on Intellectual and Developmental Disabilities []. 'Intellectual disability,' rather than 'mental retardation,' is now the preferred terminology. [Citation omitted.] Also, recently enacted federal legislation known as Rosa's Law, Pub. L. No. 111–256, 124 Stat. 2643 (2010), mandates the use of the term 'intellectual disability' in place of 'mental retardation' in all federal enactments and regulations. Nonetheless, throughout this opinion, we employ the old terminology because the legal sources relevant to our analysis, including Oklahoma law, our own prior opinions, and the opinions of the Supreme Court, use the terms 'mental retardation' and 'mentally retarded.'" _Hooks v. Workman_, 689 F.3d 1148, 1159 n.1 (10th Cir. 2012).

We now conclude that Howell is not entitled to habeas relief on either petition. The state provided him a fundamentally fair mental retardation trial, and both his guilt phase and second penalty phase were free from prejudicial error. The one cognizable error from his first penalty phase—inappropriate contact between sheriff's deputies and a juror—was corrected when Oklahoma's appellate court reversed Howell's first death sentence and remanded for a new penalty trial, which also resulted in a sentence of death. In sum, there is no ground on which we can disturb Howell's conviction or sentence.

Therefore, exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm the district court's denial of Howell's first habeas petition, and we deny a certificate of appealability (COA) as to Howell's second petition in case number 12-6014 and dismiss that appeal.

## I. Background

Howell and his girlfriend, Mona Lisa Watson, commenced a crime spree on November 2, 1987, that led to the deaths of two people. It began in a Shelby County, Tennessee, 7-Eleven market. As Watson was on her way out of the store with a six-pack of beer, Howell pulled out a silver .38 revolver and shot the store clerk, Alvin Kennedy, in the head, killing him. Howell and Watson then left the store and drove off.

The two traveled west to Oklahoma. While driving, they drank beer and used cocaine. When they reached Del City, Oklahoma, Howell decided to exit the

-3-

highway and stop at a convenience store, where he purchased lighter fluid. According to Watson's preliminary hearing testimony, their truck was low on gas, so the two were looking for another vehicle. Driving around town, they spotted a woman, later identified as United States Air Force Sergeant Charlene Calhoun, standing outside of an apartment complex next to her 1987 Toyota Tercel. Howell stopped his truck and approached her. He then shot Calhoun in the face.[2]

Watson helped Howell load Calhoun's body into the Tercel. The two then poured the lighter fluid into the truck and set it on fire before driving off with the body in Calhoun's car. A few miles down the highway, in a deserted area, they exited. After driving down a dirt road, they found what looked to be an abandoned trailer, and there they dumped the body. Back in the Tercel, Howell and Watson returned to Tennessee before continuing south to Florida.

The Del City police found the abandoned, burnt truck by the apartment complex and learned that the truck, owned by the Lynn Whitsett Corporation of

---

[2] Howell claims he was there to complete a drug deal with Calhoun on behalf of an interstate drug ring, and that, after an argument broke out about the terms of the deal, Calhoun brandished a knife. Thus, he claims he shot her in self-defense. But at the preliminary hearing, Watson denied there was a drug deal and testified that, in fact, Howell shot Calhoun without provocation so that they could steal her car. Watson recanted at trial, but no evidence was presented, other than Howell's own testimony, showing that Howell was part of a drug ring or that Calhoun dealt drugs. Ultimately, the jury found Howell guilty of first-degree murder, and on habeas review of a jury verdict, we view the evidence in the light most favorable to the government. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *see also Hooks v. Workman*, 689 F.3d 1148, 1167 (10th Cir. 2012).

Memphis, Tennessee (Howell's former employer), had been reported stolen. The police also found blood by the truck and began searching for Calhoun. Finally, on November 17, they found her badly decomposed body where Howell had left it—by a deserted trailer over four miles from the apartment complex.

About two weeks later, on November 29, police officers in Panama City, Florida, spotted a 1987 Toyota Tercel with Tennessee plates that did not match the vehicle. When the officers tried to stop the car, Howell—sitting in the passenger seat—pulled out his revolver and fired at them. The police fired back, and Watson, in the driver's seat, sped off. The police gave chase until Watson and Howell, who was shot in the leg and out of bullets, finally surrendered. The police later confirmed that the revolver Howell used during the car chase was the same silver .38 that he had used to kill Kennedy and Calhoun. The police also confirmed that the Tercel belonged to Calhoun.

Howell and Watson stood trial in Oklahoma state court for the murder of Charlene Calhoun in 1988. They both were convicted. Howell received a sentence of death, and Watson received life in prison. Tennessee then tried Howell for the murder of Alvin Kennedy in 1989; Howell was convicted and again sentenced to death. This appeal concerns alleged errors in the Oklahoma trial and in that case's subsequent proceedings.[3]

_____

[3] For Howell's Tennessee trial and subsequent proceedings in that case, see
(continued...)

## II. Procedural History

### A. First Trial

Howell and Watson were tried together before a jury in Oklahoma state court for the first-degree murder of Sgt. Calhoun. The guilt phase began on November 28, 1988, and concluded on December 6, 1988, when the jury rendered a guilty verdict as to both Howell and Watson. At that point, because the prosecution was seeking a death sentence, the trial court sequestered the jury in a local motel for the penalty phase. After two more days of hearing evidence and argument, the jury recommended a sentence of death for Howell and life in prison for Watson. The court followed both recommendations.

A few months after the trial, Howell's defense attorneys learned that one of the jurors, Diana Smith, claimed to have engaged in inappropriate conduct with two sheriff's deputies during the jury sequestration at the penalty phase. Juror Smith alleged that she had visited the deputies' motel room at night and discussed the case with them. She also alleged intimate contact with one of the deputies.

Based on these allegations and other purported errors during both phases of the trial, Howell appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals (OCCA).

---

[3](...continued)
generally *State v. Howell*, 868 S.W.2d 238 (Tenn. 1993), *cert. denied*, 510 U.S. 1215 (1994), and *Howell v. State*, No. W2009-02426-CCA-R3-PD, 2011 WL 2420378 (Tenn. Crim. App. June 14, 2011).

## B. First OCCA Decision

Howell alleged numerous errors in this appeal, including juror misconduct; the trial court's admission of Watson's preliminary hearing transcript; its admission without a limiting instruction of testimony from Watson's former attorneys, whom the prosecution called to rebut Watson's claim that the State had coerced her preliminary hearing testimony; and the failure of one juror to reveal his employment history with the CIA during his *voir dire*. We discuss these allegations in more detail below.

The OCCA affirmed the guilty verdict, finding no prejudicial error. *See Howell v. State*, 882 P.2d 1086 (Okla. Crim. App. 1994) (*Howell I*). First, the OCCA concluded that the admission of Watson's preliminary hearing transcript did not violate the Confrontation Clause, in part because the preliminary hearing testimony "was given in circumstances closely approximating those of a typical trial," thereby satisfying the criteria articulated in *California v. Green*, 399 U.S. 149 (1970), "to adequately safeguard [Howell]'s right of confrontation." *Howell I*, 882 P.2d at 1091 (citing *Green*, 399 U.S. at 165). Further, the court observed that "cross examination at a preliminary hearing can . . . satisfy the confrontation requirement." *Id.* (citing *Ohio v. Roberts*, 448 U.S. 56, 72 (1980)).

Second, Howell claimed that the trial court had "an affirmative duty to instruct the jury *sua sponte* that [the testimony of Watson's former attorneys] could be used only for impeachment purposes and not for substantive purposes."

-7-

*Id.* at 1094. The OCCA rejected that claim, saying the trial court's failure to give a limiting instruction *sua sponte* "does not automatically constitute reversible error," and that the failure did not rise to the level of "plain error" in Howell's case. *Id.*

Third, citing a prior OCCA decision, *Tibbetts v. State*, 698 P.2d 942 (Okla. Crim. App. 1985), Howell argued that a juror's "deliberate" withholding of his full employment history was inconsistent with fundamental fairness. *Howell I*, 882 P.2d at 1089. The OCCA summarily rejected this argument, saying only, "[Howell]'s reliance on *Tibbetts* is misplaced, and the proposition is denied." *Id.*

But based on the alleged juror misconduct during the penalty phase, the OCCA reversed Howell's death sentence and remanded for resentencing. The court described the alleged misconduct in some detail, including that the juror met with the deputies in their motel room during the penalty phase, that they discussed her guilt-stage deliberations, that they drank alcoholic beverages together, and that, on at least one night, they engaged in "some form of sexual activity." *Id.* at 1094. Acknowledging the "*impermissive, unauthorized* and *improper* contacts by the deputies with" the juror, the court concluded that it "must remand this case for resentencing." *Id.* at 1095 (emphasis in original).

## C. Second Penalty Phase

A second penalty phase trial was held in 1996.[4] The jury found the existence of three aggravating circumstances: (1) Howell was previously convicted of a felony involving the use or threat of violence; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) Howell probably would commit future acts of violence and thus posed a continuing threat to society. As a result, the jury recommended a punishment of death, and the trial court sentenced accordingly.

## D. Second OCCA Decision

Howell again appealed, raising sixteen alleged errors, including that the court erred in not granting a new guilt phase trial in light of the outrageous juror misconduct during the first penalty phase, and that Howell's counsel from the second penalty phase was constitutionally ineffective for telling the jury that Howell was already on death row at the Oklahoma State Penitentiary.

The OCCA affirmed in full. *See Howell v. State*, 967 P.2d 1221 (Okla. Crim. App. 1998), *cert. denied*, 528 U.S. 834 (1999) (*Howell II*). On Howell's request for a new guilt phase trial, the court noted that Howell was using the same evidence in his second appeal as he used in his first. *Id.* at 1224. Therefore, the

---

[4] Court proceedings in both Oklahoma and Tennessee caused the delay.

OCCA concluded its prior decision to remand only for resentencing was "res judicata," and it would not revisit the issue. *Id.*

On Howell's ineffective-assistance-of-counsel (IAC) claim, the court found "it was counsel's strategy to show that [Howell] had been a model prisoner while on death row, thereby rebutting the continuing[-]threat aggravating circumstance." *Id.* at 1226. The court refused to "second guess trial strategy," and denied the claim. *Id.*

The OCCA also engaged in a full sentence review, as mandated by Oklahoma law. *See* Okla. Stat. tit. 21, § 701.13(C) (1991). The court found support for each of the three aggravating factors. For the first factor, the court identified nine prior convictions against Howell involving the use of threat, force, or violence, including two counts of attempted murder in the first degree and one count of murder in the first degree during the commission of a robbery. *Howell II*, 967 P.2d at 1229. For the second factor, the court observed that "[Howell] sought to avoid arrest or prosecution for the theft of Sgt. Calhoun's vehicle" by removing her body from the scene of the murder and hiding it over four miles away before absconding with her car. *Id.* at 1227. And for the third factor, the court found that "the callous nature of the crime, [Howell]'s blatant disregard for the importance of human life, and his demonstrated pattern of criminal conduct render him a continuing threat to society." *Id.* at 1229.

The court next reviewed Howell's mitigation evidence. It listed eleven different claims Howell offered in mitigation, including that "his childhood was poor and violent," that "he suffers from a brain dysfunction," and that "he never received any intervention to recognize and treat his deficiencies." *Id.* Acknowledging Howell's mitigation case, the court nevertheless concluded that the death sentence was "factually substantiated and appropriate." *Id.* The court also found that the penalty was imposed without the influence of juror "passion, prejudice[,] or any other arbitrary factor." *Id.* Thus, the death sentence was affirmed.

### E. First Habeas Petition

After exhausting Oklahoma's post-conviction review, Howell filed a 28 U.S.C. § 2254 petition in federal court in 2000, raising ten grounds for relief. In 2002, the district court denied relief on all grounds, and Howell appealed only as to five.

Also in 2002, the Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that the Eighth Amendment barred the death penalty for persons with severe mental disabilities. At the time, Howell's appeal from the denial of his first habeas petition was before us. Howell requested that we hold his appeal in abeyance while he pursued relief from his death sentence in state court under an *Atkins* theory. We abated the appeal.

### F.  Atkins *Trial*

The Oklahoma courts determined that a trial was necessary to decide Howell's mental capacity.  A jury trial commenced for that purpose on May 23, 2005.  Howell elected not to be present.  Three witnesses—a psychologist (Dr. Daniel Grant) and two of Howell's siblings—testified on Howell's behalf.  Four witnesses—a psychologist (Dr. John Hutson), Howell's former prosecutor, a police officer, and Howell's former co-defendant and current wife (Watson)— testified for the State.  The judge instructed the jury to find Howell "mentally retarded" under Oklahoma law if Howell proved by a preponderance of the evidence (1) that he had significant subaverage intellectual functioning (*i.e.*, an IQ below 70), (2) which manifested itself before he was eighteen years of age, and (3) that he had significant limitations in adaptive functions.  On May 27, 2005, the jury unanimously decided that Howell was not mentally retarded.

### G.  Third OCCA Decision

Howell appealed the jury's *Atkins* determination to the OCCA, raising eleven propositions of error, including that the facts proven at trial demonstrated his mental retardation as a matter of law, and that the trial court should have placed the burden of proof on the government.

The OCCA affirmed the jury's decision.  *See Howell v. State*, 138 P.3d 549 (Okla. Crim. App. 2006) (*Howell III*).  Reviewing the evidence "in a light most favorable to the State," the OCCA found the record supported the verdict.  *Id.* at

562. The court observed that Howell's IQ scores ranged from 62 through 91—more than enough for a jury to conclude that Howell's true IQ was not below 70. *See id.* at 562–63.

The court also noted, "Other evidence, besides the testing scores, suggested that Howell was not limited in his abilities to understand and process information, not limited in communications [sic] skills, was able to learn from experiences or mistakes, was able to engage in logical reasoning, and was able to understand the reactions of others." *Id.* at 563. The court then highlighted Howell's hand-written letters to Watson, whom Howell married while both were in prison, and Howell's testimony at trial in 1988 and before a judge in 1996.

On Howell's burden-of-proof argument, the OCCA re-affirmed its prior decisions giving the defendant the burden to prove mental retardation by a preponderance of the evidence. *Id.* at 562 (citing, *inter alia*, *Myers v. State*, 130 P.3d 262, 265 (Okla. Crim. App. 2005)). The court explained, "[That] a defendant is not mentally retarded is not an aggravating circumstance which the State must prove beyond a reasonable doubt. . . . Eligibility for the death penalty is a different issue than proof of an aggravating circumstance." *Id.* at 561 (citing Okla. Stat. tit. 21, § 701.12 (2001)).

The court also correctly noted that several other states—including Louisiana, New York, South Carolina, and Tennessee—likewise allocated the burden of proof to the defendant. *See State v. Anderson*, 996 So. 2d 973, 984–85

(La. 2008); *People v. Smith*, 751 N.Y.S.2d 356, 357 (N.Y. Sup. Ct. 2002); *State v. Laney*, 627 S.E.2d 726, 730–32 (S.C. 2006); *Howell v. State*, 151 S.W.3d 450, 467 (Tenn. 2004); *see also Howell*, 151 S.W.3d at 467 (listing more states of accord, including Georgia, Mississippi, New Mexico, Ohio, Texas, and Virginia).[5] Hence, the OCCA denied this ground for relief as well.

### H. OCCA's Post-Conviction Review of the Atkins *Trial*

After the appeal, Howell filed another petition for post-conviction relief in state court, raising several claims of ineffective assistance of counsel during the trial on mental retardation. As relevant here, Howell alleged that the prosecution struck jurors based on their race, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and that his counsel was constitutionally ineffective for failing to object. Howell also alleged that his trial counsel failed to exclude key parts of the state expert Dr. Hutson's testimony, and that counsel failed to include testimony from Howell's former high school teacher showing that Howell had been enrolled in special education classes.

The OCCA denied post-conviction relief. *See Howell v. State*, No. PCD-2006-712, slip op. (Okla. Crim. App. Sept. 10, 2007) (unpublished) (*Howell*

---

[5] The OCCA acknowledged that, at the time of its decision, a New Jersey court had placed the burden of proof on the prosecution. But following the OCCA's decision, the New Jersey Supreme Court reversed the lower court, and now New Jersey also allocates the burden of proof to the defendant. *See State v. Jimenez*, 908 A.2d 181, 190 (N.J. 2006).

*IV*).  The court rejected the *Batson* claim because "[Howell] failed to demonstrate that the prosecutor lacked a race-neutral explanation for the strikes [Howell] complains about."  *Id.* at 5.  The court rejected the related IAC claim because it "presume[d], in the absence of any information to the contrary, that counsel had a sound strategic reason for not objecting to the removal of these panelists."  *Id.* And the court rejected Howell's IAC claim regarding the failure to object to Dr. Hutson's testimony because the court did not believe that the testimony was inadmissible in the first place, and in the alternative, it concluded the error was not prejudicial given all the other testimony from both sides about Howell's IQ and the uncertainty of IQ testing.  *Id.* at 8–11.

Lastly, the OCCA rejected Howell's IAC claim regarding the failure to include the teacher's testimony because, according to the court, the error was not prejudicial.  The court noted that Howell already presented his siblings' testimony that he was in special education classes with them in high school, and the prosecution rebutted that testimony with Howell's high school transcripts, which do not show him in special education classes (while his siblings' transcripts *do show* that they were in such classes).  Hence, reasoned the court, adding additional testimony that Howell actually was in special education classes still did not explain why his school records showed otherwise.  The court concluded, "Given [his siblings' testimony], along with extensive testimony from the defense expert, we fail to see how the very cursory information [Howell] provides from

-15-

[the teacher] would have added materially to the defense case, or how it could have altered the outcome of the trial." *Id.* at 21.

## I. *Second Habeas Petition*

After exhausting all state court remedies, Howell filed his second federal habeas petition, alleging various errors in his *Atkins* trial. The district court denied all relief. It also declined to grant a COA, meaning the court concluded that no reasonable jurist could debate whether Howell's petition should have been resolved differently or deserved encouragement to proceed further. *See, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Without a COA from the district court, Howell could not appeal the denial of his second habeas petition unless he received a COA from this court, *see* 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1), which is what Howell requested next. Specifically, he asked that we grant him a COA to appeal four of the seventeen grounds for relief before the district court (although, in what he labels a fifth ground, Howell also attempts to incorporate by reference every other ground for relief presented to the district court).

As part of our case management, we reviewed Howell's request for a COA. Like the district court, we too denied the request, but we gave Howell fourteen days to file a motion to reconsider. Howell timely moved for our reconsideration. We then consolidated Howell's pending motion with his appeal from the district

court's denial of his first habeas petition, which had been held in abeyance until now.

We now address the merits of Howell's first appeal before turning to his motion to reconsider his COA request.

## III. Discussion

Howell raises five challenges to his original guilt phase trial in 1988 and subsequent retrial for sentencing in 1996. As to his guilt phase trial, Howell argues that (1) the juror misconduct responsible for reversing his first death sentence also required granting him a new trial on guilt; (2) the admission of Watson's preliminary hearing testimony at their joint trial violated his Confrontation Clause rights; and (3) one juror's failure to fully disclose his prior employment history deprived Howell of a fair and impartial jury. He also claims that (4) his Confrontation Clause rights were violated when Watson's former attorneys were allowed to testify about prior communications with Watson during his and Watson's joint trial, a claim which Howell says the OCCA failed to address. As to his retrial for sentencing, Howell argues that (5) his counsel was constitutionally ineffective in revealing to the jury that Howell was already on death row.

Before reviewing each of these five challenges, we explain our standard of review.

-17-

### A.  *Standard of Review*

Our review of the decisions in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under AEDPA, when a state court has reviewed a claim on its merits, federal habeas relief may be granted only if the state court's decision (1) was contrary to or involved an unreasonable application of "clearly established Federal law," or (2) was based upon an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d).  "[C]learly established Federal law" is limited to Supreme Court "holdings, as opposed to the dicta, . . . as of the time of the relevant state-court decision."  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Further, a state court's determination of a factual issue is "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  In other words, AEDPA review goes no further than "preserv[ing] authority to issue the writ [of habeas corpus] in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  *Id.* (emphasis added).  Federal habeas is "not a substitute

-18-

for ordinary error correction through appeal"; it only "guard[s] against extreme malfunctions in the state criminal justice systems." *Id.* (internal quotation marks omitted).

With our standard of review in mind, we turn to Howell's claims of error from the guilt phase of his trial—including one claim, discussed last, that Howell asserts is not governed by AEDPA—before turning to Howell's claim of error from his second penalty phase.

## B. Guilt Phase

### 1. Juror Misconduct

#### a. Factual Background

At the conclusion of the guilt phase in 1988, the trial court ordered that the jury be sequestered in a local motel for the duration of the penalty phase. After the penalty phase concluded, the trial court entered a death sentence against Howell pursuant to the jury's recommendation. Months later, an investigation began into alleged wrongdoing during the jury's sequestration. From that investigation, Howell learned the following:

> [O]n the first night the jury was sequestered, both [sheriff's] deputies [charged with juror security] informed one of the jurors[, Diana Smith,] that they knew she was the only holdout for not guilty in the first stage. According to [Smith's] affidavit, Deputy Green told her, "that if it made me feel any better that he didn't believe [Howell's] story." On the second night of sequestration, after second stage evidence was presented but before sentencing deliberations, both deputies asked

-19-

> her if she felt better about voting for guilt after hearing that [Howell] had committed a murder in Tennessee. They assured her that she had "done the right thing." As to second stage defense witness, Dr. Jonathon Lipman, Deputy Canon ridiculed his credentials and laughed at his testimony which he considered boring. According to both [Juror Smith] and Deputy Cannon, they drank alcoholic beverages in the Deputies' hotel room on two successive nights and engaged in some form of sexual activity. [Juror Smith] stated that she was "hung over" during the punishment stage.

*Howell I*, 882 P.2d at 1094.

### b.  *Legal Background*

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial . . . ." *Remmer v. United States*, 347 U.S. 227, 229 (1954) (emphasis added).

### c.  *OCCA's Decision*

In light of the above allegations, the OCCA reversed Howell's death sentence and remanded for re-trial of the penalty phase only. *Howell I*, 882 P.2d at 1095. Howell received the death penalty. After the second penalty phase, Howell again raised Juror Smith and the deputies' misconduct as grounds for reversing his conviction. But the OCCA declined to revisit its earlier decision because Howell presented no new evidence showing material contact with the deputies during the guilt phase. *See Howell II*, 967 P.2d at 1224. The evidence

-20-

Howell did cite—Juror Smith's affidavit from 1989—had already been before the OCCA during the first appeal, and the OCCA declined to revisit it. *See id.*

### *d. Analysis*

The central issue here is whether Juror Smith communicated with sheriff's deputies about the case before finding Howell guilty. Any communication between the deputies and jurors after the guilt phase—*i.e.*, during the penalty phase—is beside the point, since the OCCA already reversed the first penalty phase and remanded for a new trial on Howell's sentence.

Howell cites only one pre-guilty-verdict communication: After closing arguments at the guilt phase, Juror Smith asked the two deputies whether they were armed. The deputies answered that "one was armed and one was not" but "would not say which one." Supp. App., Diana Smith Aff. (Mar. 10, 1989) at 2. "When asked why only one was armed, they replied that they had their reasons." *Id.* This evidence, which is from Juror Smith's 1989 affidavit, was previously before the OCCA both in *Howell I* and in *Howell II*.

Our review of the record confirms that this was the only communication between Juror Smith and the deputies before the guilty verdict. Further, Juror Smith also confirmed in a later interview to investigators that, "[o]ther than [the part about whether or not the deputies were armed], everything else was said . . . *after* the voting was in on the [guilt] stage . . . ." Supp. App., Report of Investigation into Misconduct (Oct. 9, 1990) at 64 (emphasis added).

-21-

Even if Juror Smith's allegations are true, the comment about the deputies being armed is not enough to grant habeas relief. No presumption of prejudice exists because the communication was not "about the matter pending before the jury." *Remmer*, 347 U.S. at 229. And the decision to remand for resentencing only—rather than for an entirely new trial on guilt—does not violate any clearly established law where the only pre-guilty-verdict contact was about one deputy being armed and the other unarmed.

The cases Howell cites do not support a different result. In *Remmer*, an unknown person allegedly told a juror during the trial that the juror "could profit by bringing in a verdict favorable to the petitioner." *Id.* at 228. The comment went to the heart of the trial's integrity. In a second case Howell points to, *Turner v. Louisiana*, 379 U.S. 466 (1965), the two principal witnesses for the prosecution were the very sheriff's deputies who "drove the jurors to a restaurant for each meal, and to their lodgings each night," and who ate with, conversed with, and did errands for the jurors. *Id.* at 467–68. And in *Parker v. Gladden*, 385 U.S. 363 (1966), before rendering a verdict, several jurors overheard a bailiff say the defendant was a "wicked fellow" and "guilty" and that the Supreme Court "will correct it" if the defendant turns out to be innocent. *Id.* at 363–64.

In each of these cases, the Supreme Court reversed the guilty verdicts because outsiders communicated with the jurors about the case before them or, like the deputy-witnesses in *Turner*, fraternized with the jurors in a way that

-22-

could prejudice how the jury credited a witness's testimony. In Howell's guilt phase, by contrast, we do not have a communication about the "matter pending before the jury," nor do we have officers in charge of the jury also serving as witnesses for the prosecution. The OCCA contravened no clearly established Supreme Court precedent in affirming the guilt phase verdict despite the one pre-verdict comment.

Nor can we overturn the OCCA's decision to deny Howell an evidentiary hearing. The record directly contradicts any claim that comments about the case were made before the guilty verdict. We see no basis for an evidentiary hearing. *See Littlejohn v. Trammell*, 704 F.3d 817, 857–58 (10th Cir. 2013) (even where a petitioner diligently developed the factual basis for his claim, he is not entitled to an evidentiary hearing if his claim is contravened by the existing factual record). Moreover, both Howell and the State had an opportunity to interview all of the jurors back in 1989, and neither found any evidence of pre-guilt communication other than the comment about the deputies carrying a weapon. And since 1989, Howell has not "diligently sought to develop the factual basis underlying" this claim further, so AEDPA deference applies to the OCCA's decision to deny an evidentiary hearing. *Smallwood v. Gibson*, 191 F.3d 1257, 1266 (10th Cir. 1999). Under AEDPA deference, the decision cannot be overturned.

Accordingly, we affirm the district court's denial of relief on this ground.

## 2. Co-Defendant's Preliminary Hearing Testimony

### a. Factual Background

Howell next alleges the Oklahoma trial court violated his Confrontation

Clause rights when it admitted his co-defendant Watson's preliminary hearing

transcript into evidence at their joint trial.

> The record reveals that Ms. Watson, pursuant to a plea
> bargain agreement, agreed to testify on behalf of the
> State. She did so at the preliminary hearing. Her
> testimony provided the evidence to support the malice
> aforethought element of the first degree murder charge.
> She admitted during the preliminary hearing that she and
> [Howell] drove around the apartment complex looking
> for a car to steal. She admitted that she spoke to Ms.
> Calhoun for the purpose of diverting her attention while
> [Howell] shot her. She testified that she burned the
> truck they were driving and helped to load Sgt.
> Calhoun's body into her car.
>
> Ms. Watson subsequently changed her mind about the
> agreement, alleging that she was the target of coercion
> and suggestion with respect to the substance of her
> preliminary hearing testimony. Several pre-trial motions
> and hearings were had on this issue as well as objections
> at trial. The trial court overruled the motions and
> objections to the admission of the preliminary hearing
> testimony at trial.

*Howell I*, 882 P.2d at 1090.

### b. Legal Background

The Sixth Amendment's Confrontation Clause guarantees all criminal

defendants "the right . . . to be confronted with the witnesses against [them]."

U.S. Const. amend. VI. Howell's Confrontation Clause claims are governed by

-24-

the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56 (1980).[6]  In

*Roberts*, the Supreme Court established two components for evaluating these

claims.  First, "the prosecution must either produce, or demonstrate the

unavailability of, the declarant whose statement it wishes to use against the

defendant."  *Id.* at 65.  Second, "once a witness is shown to be unavailable," the

witness's hearsay is permitted only if it is supported by "indicia of reliability."

*Id.* at 65–66 (internal quotation marks omitted).  *Roberts* recognized two indicia

of reliability:  (1) "a firmly rooted hearsay exception," or (2) "a showing of

particularized guarantees of trustworthiness."  *Id.* at 66.

### c.  OCCA's Decision

The OCCA concluded that the admission of Watson's preliminary hearing

transcript did not violate Howell's confrontation right.  The court reasoned that

Watson was unavailable at trial because she had changed her mind about a

previous plea agreement and refused to testify for the State or against Howell.

Under Oklahoma law, "a person charged with a crime is a privileged witness who

cannot be made to testify (except at his or her own request) in a trial where the

person or any co-defendant is being tried for the respective charge."  *Howell I*,

882 P.2d at 1090 (citing Okla. Stat. tit. 22, § 701).  The OCCA explained, "[I]t

---

[6]  We cannot grant Howell relief based on the Supreme Court's subsequent decision in *Crawford v. Washington*, 541 U.S. 36 (2004), because Howell's trial and direct appeals concluded before the Supreme Court decided *Crawford*.  *See Whorton v. Bockting*, 549 U.S. 406, 409 (2007).

would have resulted in prejudicial error if the State had called co-defendant Watson to the stand with knowledge that she would invoke her privilege against self[-]incrimination." *Id.* at 1091. In any event, noted the court, Watson's preliminary hearing testimony "was given in circumstances closely approximating those of a typical trial." *Id.* She testified "under oath in a truth-inducing courtroom atmosphere," and Howell "was represented by counsel, through whom [he] had ample opportunity to cross examine Ms. Watson." *Id.* Accordingly, the court denied relief on this claim.

### d. Analysis

Howell argues the admission of Watson's preliminary hearing testimony violated his Confrontation Clause rights because Watson was not "unavailable" as required by the *Roberts* test. But the OCCA decided that Watson *was* "unavailable" according to Oklahoma law and that, in any event, her preliminary hearing testimony was sufficiently reliable to be admissible under *Roberts* and another Supreme Court decision, *California v. Green*, 399 U.S. 149 (1970).

Howell cites no holding to the contrary of the OCCA's decision, nor can he. At the time of his trial and appeal, the Supreme Court had already affirmed the use of preliminary hearing testimony where, as here, the defendant "had an effective opportunity for confrontation at the subsequent trial" and the witness's preliminary hearing testimony "had already been given under circumstances

-26-

closely approximating those that surround the typical trial." *Id.* at 165. Thus, under AEDPA deference, we cannot disturb the OCCA's decision.

What is more, Watson's preliminary hearing transcript could have been admitted at trial without violating Howell's confrontation right *regardless* of Watson's availability at trial. In *Green*, the witness whose preliminary hearing testimony was admitted against the defendant had been cross-examined by the defendant at trial. *See id.* at 151–52. But the Supreme Court explained that the witness's preliminary hearing testimony would have been admissible even if he had been unavailable at trial. *Id.* at 165 (emphasis added). This was so because, at the preliminary hearing, the witness was "under oath"; the defendant was "represented by counsel" and had "every opportunity to cross-examine" the witness; and "the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings." *Id.* Under those circumstances, explained the Court, preliminary hearing testimony is "admissible at trial even . . . if [the witness] had been actually unavailable." *Id.* Later, the Court incorporated this analysis into its test in *Roberts*. *See Roberts*, 448 U.S. at 68–74.

Because all the circumstances listed in *Green* were present here as well, Watson's preliminary hearing transcript could have been admitted without violating Howell's confrontation right, whether Watson was "available" for cross-examination or not. Hence, all of Howell's arguments about Watson's availability are beside the point.

The four arguments Howell makes to the contrary do not demand a different result. He argues, first, that the Supreme Court's decision in *Barber v. Page*, 390 U.S. 719 (1968), requires more than just Howell's cross-examination of Watson at the preliminary hearing to admit that testimony against Howell at trial. But the Supreme Court's holding in *Barber* is not supportive. In *Barber*, the prosecution presented as evidence against Barber a preliminary hearing transcript of a co-defendant who was not present at trial. The Court reversed Barber's conviction because his Confrontation Clause right was violated where the prosecution "ma[d]e no effort to produce [the co-defendant] at trial." *Id.* at 725. And Barber, moreover, did not cross-examine the witness at the preliminary hearing either. Here, by contrast, Watson *was* present at Howell's trial, and he did confront her through cross-examination at the preliminary hearing and when she testified on her own behalf. *See* Trial Tr., Vol. VI, at 161–67. The prosecution's error in *Barber*—not having the co-defendant available for cross-examination at trial—is absent in this case.

Second, Howell asserts *Roberts* does not allow using prior testimony where, as here, the prior testimony is not reliable because, as Howell puts it, Watson had "every motive to fabricate" her prior testimony. Aplt. Br. at 36. It is true that *Roberts* does not permit the use of unreliable hearsay testimony. 448 U.S. at 66.

But the determination of whether Watson's prior testimony was reliable belonged to the state court. And, as the record shows, Watson's preliminary

-28-

hearing testimony bore sufficient indicia of reliability for the OCCA's decision to survive AEDPA deference. Watson was under oath, Howell was represented by trial counsel who cross-examined Watson extensively, the hearing was before a judicial tribunal, the hearing was recorded, and, at trial, both the direct and cross-examinations were read to the jury (with only a few exceptions not relevant here). More significantly, Watson later testified at Howell's trial and was again cross-examined by Howell's counsel. As in *Roberts*, "[s]ince there was an adequate opportunity to cross-examine [Watson], and counsel . . . availed himself of that opportunity, the transcript . . . bore sufficient indicia of reliability and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *Id.* at 73 (internal quotation marks omitted).

Third, Howell suggests the OCCA's decision violated the Supreme Court's holding in *Bruton v. United States*, 391 U.S. 123 (1968). In *Bruton*, the Court held that the admission of one defendant's confession implicating a second defendant at a joint trial constituted prejudicial error even though the trial court gave clear instructions that the confession could be used only against the first defendant, not against the second. *Id.* at 126. But *Bruton* does not apply here, because Watson's testimony at her preliminary hearing *could be used* against both defendants. The problem in *Bruton* was that the co-defendant, Evans, never took the stand, so Bruton could never confront him through cross-examination. *See id.*

at 127–28.  By contrast, here, Howell was able to cross-examine Watson both at her preliminary hearing and at their joint trial.

Fourth and finally, Howell argues that a Sixth Circuit case, *Earhart v. Konteh*, 589 F.3d 337 (6th Cir. 2009) (granting habeas relief based on the unconstitutional admission of hearsay), dictates granting habeas relief here.  But *Earhart* is not "clearly established Federal law" for purposes of AEDPA because it is not a Supreme Court holding.  *See Carey*, 549 U.S. at 74; *see also House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).  Besides, *Earhart* is distinguishable from this case because it involved a minor victim who could have been available at trial but was not—which does not apply here because Watson *was* at trial and was cross-examined by Howell.

Accordingly, we affirm the district court's denial of relief on this ground.

### 3.  Juror Candor

#### a.  Factual Background

During jury selection for Howell's 1988 trial, one of the potential jurors, Les Bays, who later served as the jury foreman, failed to reveal eight years of prior employment with the CIA.  (He did, however, reveal his over twenty years of work for the Marine Corps, along with other past jobs.)  Howell's attorney discovered this omission after trial.  In subsequent proceedings, when Howell's counsel asked why Bays did not reveal this information, Bays responded, "You didn't ask the right questions." *Howell I*, 882 P.2d at 1089.  On direct appeal to

the OCCA, Howell claimed that, had he known Bays used to work for the CIA, he would have excluded him on a peremptory challenge because "CIA activities are akin to law enforcement connections." *Id.*

### b. *Legal Background*

"A trial represents an important investment of . . . resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984). Accordingly, to obtain a new trial on appeal, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge *for cause*." *Id.* at 556 (emphasis added).

### c. *OCCA's Decision*

The OCCA summarily rejected this claim, saying only, "[Howell], citing *Tibbetts v. State*, 698 P.2d 942, 945 (Okla. Crim. App. 1985), argues that juror Bays' deliberate withholding of pertinent information was 'not consistent with the principles of fundamental fairness.' [Howell]'s reliance on *Tibbetts* is misplaced, and the proposition is denied." *Howell I*, 882 P.2d at 1089.

### d. Analysis

Howell claims that, had Juror Bays revealed his work with the CIA, Howell would have used a peremptory challenge. But even so, Howell is not entitled to habeas relief. *See McDonough*, 464 U.S. at 555 (rejecting a request to grant a new trial "simply to recreate the peremptory challenge process").

Howell also claims that Juror Bays's previous employment with the CIA was a basis for finding juror bias and thus a valid challenge for cause. This claim turns on the second prong of the *McDonough* test—whether Howell can show that "a correct response would have provided a valid basis for a challenge *for cause*" based on juror bias. We now turn to whether Howell has shown that Bays's omission demonstrates juror bias. We conclude that it does not.

"[E]ven where the issues were more closely related than they are in the instant case, we have declined to infer juror bias." *United States v. McConnel*, 464 F.3d 1152, 1157 (10th Cir. 2006).

> In *Gonzales v. Thomas*, 99 F.3d 978 (10th Cir. 1996), no bias, actual or implied, was found . . . [where] the juror in question had been a rape victim 24 years earlier, and the prosecution there was for rape and armed robbery. Nevertheless, despite some similarities in the types of cases, [we] held that the juror did not show actual bias, nor had she deliberately concealed her experience during voir dire. . . . [We] also found no implied bias.

*Id.* 1157–58. "If a rape victim can be an impartial juror in a rape prosecution, then surely [a] juror . . . whose experience was having been charged with

embezzlement and fraud and against whom the charges had been dismissed, could be an impartial juror for the trial of [a] weapons case." *Id.* at 1158.

And if a prior defendant for embezzlement and fraud could be an impartial juror for a weapons case, then we see no reason Juror Bays could not serve as an impartial juror for a murder case where his only undisclosed experience was eight years of service in the CIA (compared to over twenty years of experience in the Marine Corps, including exposure to court-martial proceedings, which Juror Bays did disclose during the *voir dire*). Moreover, Howell has not shown that Juror Bays answered any question dishonestly, only that Bays did not volunteer this extra information. Thus, Howell has failed to show juror bias justifying a challenge for cause, and—especially considering AEDPA deference to the OCCA's decision to deny relief—this claim cannot succeed.

Nor is Howell entitled to an evidentiary hearing for this claim. The district court denied Howell's request for an evidentiary hearing on this issue because Howell had "done little more than allege possible bias." *Howell v. Mullin*, No. CIV-99-1803-A, slip op. at 33 (W.D. Okla. Sept. 5, 2002). And the district court's decision was not in error. Assuming Howell has diligently sought to develop the factual basis for this claim, he "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). But the record contravenes Howell's allegation that

Juror Bays *intentionally* withheld his prior employment with the CIA, and, as explained above, that prior employment is not cause for challenge anyway. We cannot grant Howell an evidentiary hearing on this claim.

Accordingly, we affirm the district court's denial of relief on this ground.

### 4. Testimony of Co-Defendant's Former Attorneys

#### a. Factual Background

At their joint preliminary hearing, Watson testified that Howell shot Calhoun in order to steal Calhoun's car. Howell was present and able to cross-examine Watson.

At their joint trial, however, Watson recanted and claimed that, in fact, Howell shot Calhoun in self-defense. She explained that the prosecution had coerced her preliminary hearing testimony to the contrary. Again, Howell was present and able to cross-examine Watson.

In response to Watson's changed story, the prosecution called as rebuttal witnesses two attorneys who had been Watson's counsel at the time of the preliminary hearing but were no longer representing her. The attorneys testified that Watson's preliminary hearing testimony was "consistent" with what she had previously told them about the crimes, and that their conversations with her occurred before any contact with the district attorney—negating her claim of coercion. *See* Trial Tr., Vol. VI, at 215, 220–21. Further, they testified that they had accompanied her to meetings with the prosecution, and that the prosecutors

only ever asked Watson to tell the truth. As was the case with Watson, Howell was present and able to cross-examine the former attorneys. Watson was also available to re-take the stand if the defense chose to call her again.

### b. Legal Background

Howell alleges that his Sixth Amendment right to confrontation was violated by the admission of the former attorneys' testimony. As with Howell's other Confrontation Clause claim, we cannot grant Howell relief based on *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny. Howell may succeed with this Confrontation Clause claim only if, under pre-*Crawford* case law, the former attorneys' testimony violated Howell's Confrontation Clause rights. *See Whorton v. Bockting*, 549 U.S. 406, 409 (2007).

Under pre-*Crawford* case law, "the Confrontation Clause is *not* violated by admitting a declarant's out-of-court statements, *as long as* the declarant is testifying as a witness [at trial] and subject to full and effective cross-examination." *Green*, 399 U.S. at 158 (emphasis added). "The Constitution . . . is violated *only where* the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination." *Nelson v. O'Neil*, 402 U.S. 622, 626–27 (1971) (emphasis added).

### c. Standard of Review

If the OCCA addressed this claim, as it did the others, we would be reviewing its determination under AEPDA deference. But Howell contends the

-35-

OCCA failed to address this claim, *see* Aplt. Br. at 41–42, and the State agrees, *see* Aple. Br. at 27–28. The district court concluded the same. *Howell v. Mullin*, No. CIV-99-1803-A, slip. op. at 20 ("It does not appear [Howell]'s claim was addressed directly by the OCCA."). And because, according to the district court, Howell "raised this issue on direct appeal," the court considered the claim to have been "exhausted in state court" and proceeded to review the claim on its merits. *Id.*

But since the parties briefed this issue, the Supreme Court has clarified that, even when a state court does not explicitly address a claim, we must presume the court adjudicated the claim on its merits unless that presumption is rebutted. *Johnson v. Williams*, 133 S. Ct. 1088, 1091–92 (2013).

And, in fact, it appears the state court *did* address this claim, at least in part. In *Howell I*, the OCCA states,

> In his proposition XII, [Howell] refers . . . *to the testimony of Ms. Watson's two former attorneys*, who testified that Ms. Watson's preliminary hearing testimony was consistent with her statements to them. [Howell] holds that under these circumstances, the trial court had an affirmative duty to instruct the jury *sua sponte* that this evidence could be used only for impeachment purposes and not for substantive purposes.
>
> We do not agree. . . . [T]he failure of a trial court to give a limiting instruction *sua sponte* does not automatically constitute reversible error. On the record before us, we cannot say that the failure of the trial court to give a limiting instruction *sua sponte* deprived

-36-

[Howell] of a substantial right rising to the level of plain error.

*Howell I*, 882 P.2d at 1094 (emphasis added).  In sum, according to the OCCA, Howell was challenging the lack of a limiting instruction for the attorneys' testimony, and, without a proposed limiting instruction from Howell, the trial court did not plainly err in failing to offer its own.[7]

Because the OCCA decided whether the omission of a limiting instruction violated Howell's rights, we review that decision under AEDPA.  But what about the admission of the former attorneys' testimony in the first place?  The district court is correct that the OCCA did not mention whether or not admitting such evidence violated Howell's Confrontation Clause rights, yet the Supreme Court has established a rebuttable presumption that the state court did decide the issue.

In the end, we need not decide whether AEDPA deference applies, because even if it does not, we cannot grant Howell habeas relief on this claim.  At trial, Howell did not object to the testimony of Watson's former attorneys, so review of the trial court's admission of this testimony would be for plain error under state or federal law.  *See United States v. Hinson*, 585 F.3d 1328, 1335–38 (10th Cir.

_____

[7] Howell claims he proposed a limiting instruction, but the instruction he cites is not on point.  His proposed instruction does not address whether the testimony could be used substantively or for impeachment purposes only.  *See* O.R. (1989), Vol. II, at 551 ("a confession or admission may not be considered . . . against any defendant other than the person who made the confession or admission").

2009); *McGregor v. State*, 885 P.2d 1366, 1375 (Okla. Crim. App. 1994). And under plain error review—let alone under AEDPA deference—this claim fails.

### d. Analysis

We turn first to plain error review of whether admitting the former attorneys' testimony violated Howell's confrontation right. Then we address under AEDPA deference whether the trial court erred in omitting a limiting instruction.

The relevant out-of-court statements admitted against Howell are Watson's private conversations with her former attorneys and Watson's testimony at the preliminary hearing. While testifying at Howell's trial—under oath and subject to Howell's cross-examination—Watson's former attorneys said only that whatever Watson told them before her preliminary hearing was "consistent" with what she later said at the preliminary hearing. Trial Tr., Vol. VI, at 215, 220–21. The former attorneys never actually quoted Watson or even paraphrased what she had said. To the extent their testimony was still hearsay,[8] the out-of-court declarant was Watson. And Watson "testif[ied] as a witness" and was "subject to full and effective cross-examination" at her and Howell's joint trial.[9] *See Green*, 399 U.S.

---

[8] Arguably, the testimony was not hearsay under the Oklahoma equivalent of Federal Rule of Evidence 801(d)(1)(B) for prior consistent statements. But we need not decide this question of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

[9] Howell and Watson were represented by separate counsel at the joint
(continued...)

-38-

at 158.  Moreover, as we mentioned above, her preliminary hearing testimony, like that in *Green*, "had already been given under circumstances closely approximating those that surround the typical trial."  *Id.* at 165.  Thus, under pre-*Crawford* precedent, there is no Confrontation Clause violation.

To be sure, the former attorneys' testimony may have violated Watson's attorney-client privilege.  On that basis, *Watson's* trial counsel made an objection, which the judge overruled because he believed that Watson had waived the privilege.  And it is true that Watson may in fact have waived her privilege when she testified about some of her communications with the former attorneys.

---

[9](...continued)
trial, and Howell's attorney cross-examined Watson after Watson took the stand in her own defense.  Watson was therefore both legally unavailable and physically available to testify, an odd situation not apparently contemplated by either *Roberts* or *Green*.  Two cases after *Roberts* relaxed the strict unavailability requirement, making Watson's physical availability more important to the pre-*Crawford* Confrontation Clause analysis.  *See White v. Illinois*, 502 U.S. 346, 357 (1992) ("We therefore see no basis in *Roberts* or *Inadi* for excluding from trial, under the aegis of the Confrontation Clause, evidence embraced within such exceptions to the hearsay rule as those for spontaneous declarations and statements made for medical treatment."); *United States v. Inadi*, 475 U.S. 387, 400 (1986) ("[W]e continue to affirm the validity of the use of co-conspirator statements, and we decline to require a showing of the declarant's unavailability as a prerequisite to their admission.").  Moreover, although Watson's statements to her attorneys likely lacked the "indicia of reliability" required by *Roberts*, the state did not introduce those statements but rather elicited testimony about their "consistency" with the admissible statements she made in the pretrial hearing.  The combination of Watson's actual availability and the fact that her inadmissible statements were never introduced leads to the conclusion that Howell's Confrontation Clause rights were not violated.

But we need not decide whether the privilege was violated, because "standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Partington v. Gedan*, 961 F.2d 852, 863 (9th Cir. 1992) (quoting *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)) (alteration incorporated; internal quotation marks omitted); *see also Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) ("a violation of the attorney-client privilege is not *itself* a 'violation [] of the United States Constitution or its law and treaties'" (emphasis in original)). *But see* Note, *The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement*, 91 Harv. L. Rev. 464, 485 (1977) ("[W]hen the [F]ifth and [S]ixth [A]mendments are considered together, the individual accused of crime does seem to have a right to attorney-client privilege."). "A violation of the attorney-client privilege implicates the Sixth Amendment right to counsel *only . . . when* the government interferes with the relationship between a criminal defendant and his attorney." *Partington*, 961 F.2d at 863 (emphasis added).

Here, assuming no waiver, the only attorney-client privilege violated was that between Watson and her *former* counsel. The relationship with her trial counsel was unimpaired, so her Sixth Amendment right to counsel was not violated under plain error review.[10]

_____

[10] We also need not decide whether Howell is able to bring a claim based
(continued...)

-40-

Howell also argues that the Sixth Amendment requires a limiting instruction here. As discussed above, we review this claim under AEDPA deference. The OCCA concluded the lack of a limiting instruction did not plainly violate any substantive right. Howell disagrees, relying on the Supreme Court's decision in *Tennessee v. Street*, 471 U.S. 409 (1985). In *Street*, the Court noted that "[i]f the jury had been asked to infer that [the co-defendant's] confession proved that [Street] participated in the murder, then the evidence would have been hearsay; and *because [the co-defendant] was not available for cross-examination*, Confrontation Clause concerns would have been implicated." *Id.* at 414 (emphasis added). Here, by contrast, Watson *was* available for cross-examination, so even if hearsay had been elicited, there was no Confrontation Clause violation. And in any event, even if there were error, it was harmless since the evidence overwhelmingly supported the jury's finding of Howell's guilt. Hence, the OCCA's resolution is not contrary to clearly established law, and we cannot disturb the decision.

We affirm the district court's denial of relief on this ground.

---

[10](...continued)
on a privilege belonging to Watson, not him.

### C. Second Penalty Phase Trial

#### 1. Ineffective Assistance of Counsel

##### a. Factual Background

According to Howell, his trial counsel made a "serious error" during the sentencing retrial in 1996: "Counsel called as a witness for Mr. Howell his prison case manager to inform the jury about Mr. Howell's good conduct in prison. . . . The witness did not mention 'death row,' but *counsel* did. Several times." Aplt. Br. at 47 (emphasis in original).

##### b. Legal Background

To make out an IAC claim under *Strickland v. Washington*, 466 U.S. 668 (1984), Howell must show both (1) that his counsel provided deficient assistance and (2) that there was prejudice as a result. "To establish deficient performance, [Howell] must show . . . that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Howell] by the Sixth Amendment." *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted). To establish prejudice, Howell "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 788 (internal quotation marks omitted). "Even under de novo review, the standard for judging counsel's representation is a most deferential one." *Id.* "Establishing

-42-

that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citations and internal quotation marks omitted).

### c. OCCA's Decision

The OCCA rejected this IAC claim, reasoning, "[I]t was counsel's strategy to show that [Howell] had been a model prisoner while on death row, thereby rebutting the continuing[-]threat aggravating circumstance. Evidence was presented that [Howell] had not been in solitary confinement twenty-four hours a day, but had been outside of his cell with other prisoners. This Court will not second guess trial strategy." *Howell II*, 967 P.2d at 1226.

### d. Analysis

Under our "doubly" deferential standard of review, Howell's claim cannot prevail. First, Howell argues that "telling the jury that a different, prior jury, had sentenced someone to death is a terrible mistake, predisposing the instant jury to follow the earlier jury's recommendation." Aplt. Br. at 47. But he cites no clearly established law saying as much, nor can we find any. Therefore, under AEDPA deference, we cannot overturn the OCCA's decision.

Admittedly, Howell's counsel could have demonstrated Howell's good behavior in prison without mentioning death row specifically. But that mistake alone is not enough to overcome *Strickland* and AEDPA deference. And in fact,

-43-

"evidence of a prior death sentence may not produce a unidirectional bias toward death." *Romano v. Oklahoma*, 512 U.S. 1, 20 (1994) (Ginsburg, J., dissenting). Here, because the jurors were being asked to give Howell a new sentence, they could have deduced that the prior sentence was handed down in error—*i.e.*, it was wrong. So when they learned from defense counsel that Howell's first sentence was death (implied from Howell being on death row), that revelation could have weighed against giving Howell a death sentence again.

Second, Howell argues that by informing the jury of his presence on death row, his counsel relieved the jury from making a new, independent, reasoned moral judgment about whether Howell should live or die, thereby violating *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

The district court correctly rejected this argument—the OCCA's decision did not violate the holding in *Caldwell*. "To establish a *Caldwell* violation, [Howell] necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams*, 489 U.S. 401, 407 (1989). Following its review of the record, the district court noted that "no statements or insinuations were made that anyone other than the jury had the duty and responsibility to determine [Howell's] sentence," so no attorney committed a *Caldwell* violation. *Howell v. Mullin*, No. CIV-99-1803-A, slip op. at 48. Howell does not demonstrate otherwise. His sole allegation—that counsel told the jury Howell was on death row—is not an "improper[] descri[ption] [of] the role

-44-

assigned to the jury."  In fact, it is not a reference to the jury's role at all, and for that reason alone, this argument fails.

Accordingly, we affirm the district court's denial of relief on this ground.

### D.  Motion To Reconsider COA Request

Having found no ground to grant federal habeas relief from either the guilt phase or second penalty phase, we turn to the alleged errors in Howell's trial on mental retardation.  Because the district court denied a COA, we cannot review Howell's claims on their merits unless we first grant Howell a COA.  We have already denied his request for a COA, but he timely moved for our reconsideration.  He asked us to grant COA on four issues:  (1) the applicable burden of proof in *Atkins* proceedings; (2) prosecutorial misconduct at jury selection; (3) ineffective assistance of counsel; and (4) insufficient evidence to support the jury's mental retardation finding.

We grant a COA only if an applicant makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An applicant must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) (internal quotation marks omitted).

Howell's claims already have been adjudicated on the merits in state court, so he can obtain federal habeas relief only if he can overcome AEDPA deference

-45-

—*i.e.*, only if he can establish that the state court's decision was either (1) contrary to or involved an unreasonable application of "clearly established Federal law," or (2) was based upon an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d). Thus, the decision whether to grant Howell's COA request rests on whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" in light of the deference owed to the OCCA's adjudication of Howell's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *see also id.* at 336 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason.").

Based on these principles, we find no persuasive reason to reconsider our previous decision denying COA.

### 1. Burden of Proof

Howell first claims the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), require the prosecution to bear the burden of proving Howell is not mentally retarded. After analyzing both Supreme Court cases, the OCCA disagreed and denied this claim. The district court concluded the OCCA's interpretation and application of *Apprendi* and *Ring* were reasonable and therefore entitled to AEDPA deference. Consequently, the district court denied this ground for relief.

The district court's decision is not debatable—Howell cannot overcome AEDPA deference. In *Apprendi*, the Supreme Court held that any fact (other than prior conviction) that increases the maximum penalty for a crime must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476. In *Ring*, the Supreme Court extended *Apprendi* to capital defendants, thereby requiring prosecutors to prove beyond a reasonable doubt statutory aggravating circumstances to impose the death penalty. *See Ring*, 536 U.S. at 589. Neither holding applies directly to the circumstances of our case, so under AEDPA deference, the OCCA's decision cannot be challenged.

Nevertheless, Howell argues this question "remains open and debatable," and therefore a proper ground for a COA. Aplt. COA Br. at 33. But the problem for Howell is that this question's *lack of firm resolution* precludes any relief, given that the OCCA has already taken a reasonable position. The OCCA's determination here is not contrary to a Supreme Court holding, so none could debate the district court's decision that AEDPA deference precludes relief.

Moreover, we have already held that Oklahoma law on this burden-of-proof question was not contrary to Supreme Court precedent. *See Ochoa v. Workman*, 669 F.3d 1130, 1133 n.1 (10th Cir. 2012). And other courts agree. *See, e.g.*, *United States v. Webster*, 421 F.3d 308, 311–12 (5th Cir. 2005) (rejecting that *Apprendi* and *Ring* require placing the burden on the prosecution to prove beyond a reasonable doubt that a defendant is not mentally retarded); *State v. Were*, 890

N.E.2d 263, 478–79 (Ohio 2008) (same, and listing other state courts of accord, including those of Arizona, Georgia, Indiana, Kentucky, Mississippi, and Pennsylvania); *supra* Part II.F. (listing still other state courts holding the same, including those of Louisiana, New Jersey, New Mexico, New York, South Carolina, Tennessee, Texas, and Virginia); *see also Bowling v. Commonwealth*, 163 S.W.3d 361, 381–82 (Ky. 2005) ("Every state statute providing a mental retardation exemption from the death penalty places the burden on the defendant to prove that he is mentally retarded, as has every court that has addressed the issue, usually in the context of holding that the absence of mental retardation is not an element of the offense." (footnotes omitted)).

Accordingly, we deny Howell's request for a COA on this issue.[11]

### 2. *Prosecutorial Misconduct*

Howell claims the prosecution used two peremptory challenges on the basis of race, thereby violating the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986). Reviewing for plain error (since Howell did not raise a

---

[11] Howell also argues that "[b]ecause a finding of retardation precludes the death sentence, the absence of retardation is a necessary finding for imposition of death within the meaning of *Ring*." Aplt. COA Br. at 34. But that logic does not mandate placing the burden of proof on the prosecution. Just because finding a defendant incompetent to stand trial precludes sentencing him to death does not mean the prosecution must prove a defendant's competence. *See Medina v. California*, 505 U.S. 437, 449–51 (1992). It is the same with mental retardation. Until the Supreme Court holds otherwise, no reasonable jurist could debate the district court's decision to deny relief.

*Batson* objection at trial), the OCCA found no merit to this claim, concluding Howell failed to show that the prosecutor lacked a race-neutral explanation for the two strikes in question. Thus, Howell would have to overcome AEDPA deference if granted a COA.

The district court also rejected this claim, but for a different reason. According to the district court, Howell failed to make a prima facie case that the two jurors were removed due to their race. It explained, "the race of these jurors is not borne out by the record." *Howell v. Workman*, No. CIV-07-1008-D, 2011 WL 5143069, at *24 (W.D. Okla. Oct. 28, 2011). For that reason, the district court concluded Howell failed to meet his burden under step one of *Batson*, and it dismissed the claim accordingly.

*Batson* provides

> a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race:
>
> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008) (alterations incorporated) (citations and internal quotation marks omitted).

-49-

The district court's decision to reject this claim is not "debatable or wrong." As the district court explained, nowhere in the record is there any reference to a juror's race. Howell does not point to one, and we cannot find one. Nor has Howell attempted to supplement the record with an affidavit from any juror or other person present at trial to establish a juror's race. And in the alternative, the record amply supports the State's contention that the prosecutor had race-neutral reasons for excusing the jurors—namely, their experiences with mentally disabled people in their personal lives.

The district court also denied Howell's motion for an evidentiary hearing as untimely, and that decision also is not open to debate. After granting several extensions, the court gave Howell until April 7, 2008, to file an additional motion. But Howell did not submit his motion for an evidentiary hearing until July 2009—fifteen months after the deadline. And Howell offered no reason for the untimeliness of his motion. No reasonable jurist could debate whether this issue should have been resolved differently. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

Accordingly, we deny Howell's request for a COA on this ground.[12]

### 3. Ineffective Assistance of Counsel

Howell raised three claims of ineffective assistance at his *Atkins* trial: (1) trial counsel's failure to object to the alleged *Batson* violations, (2) his failure to exclude the state mental health expert's testimony, and (3) his failure to present an additional witness to show that Howell was in special education classes as a youth. The OCCA denied all three IAC claims, so Howell would have to overcome AEDPA deference if we granted a COA. And under AEDPA deference, the OCCA violated no clearly established federal law in denying relief for Howell's IAC claims because Howell is unable to show prejudice from any of these alleged mistakes. Accordingly, no reasonable jurist could disagree with the district court's decision to deny relief for these claims as well.

We turn first to defense counsel's failure to object to the alleged *Batson* violations. Because Howell has not shown any *Batson* violations, he cannot show counsel erred in failing to object. Thus, he is not entitled to habeas relief.

---

[12] We agree with Howell that the OCCA misstated clearly established law when it said Howell bore the burden of showing the prosecution lacked a race-neutral explanation for the strikes. As Howell correctly notes, the prosecution bears that burden. *See Snyder*, 552 U.S. at 477. But we do not get to the prosecution's burden of providing a race-neutral explanation—step two of a *Batson* claim—unless Howell first gets us past step one. *See, e.g.*, *id.* at 477–78. And as the district court concluded, Howell has not made the requisite prima facie case. No reasonable jurist could debate that conclusion.

The other two IAC claims merit additional discussion. Howell argues that his counsel was constitutionally ineffective for failing to challenge or exclude Dr. Hutson (the State mental health expert)'s conclusions. And he claims his counsel was constitutionally ineffective for failing to present at trial the testimony of a former high school teacher who says she taught Howell and his brother in a special education class in high school.

The OCCA rejected Howell's first claim for lack of prejudice because "[b]oth experts used their professional knowledge and experience to 'estimate' what they believed [Howell's] true IQ to be," and "both experts used a wide array of information, well beyond raw IQ scores, to arrive at their respective conclusions about [Howell's] mental abilities." *Howell IV*, No. PCD-2006-712, slip op. at 9, 11. More, both experts were exposed to vigorous and effective examination regarding their testimony, further mitigating any potential prejudice. Given AEDPA deference to the OCCA—not to mention the plethora of evidence supporting the OCCA's and jury's conclusions—the district court's decision to deny relief for this IAC claim is not open to debate.

The OCCA rejected Howell's other IAC claim because, even if the high school teacher had testified at Howell's Oklahoma trial, a reasonable jury could have concluded that Howell failed to prove by a preponderance of evidence that he manifested mental retardation before the age of eighteen. In light of AEDPA deference, the district court denied relief.

-52-

No reasonable jurist could debate this decision, either. Howell's brother testified at the *Atkins* trial, and he said—as the teacher also would have said—that Howell was in special education classes in high school. But the school records belied that claim: Howell's brother and sister were both listed in special education, while Howell was not. Having one more voice (the teacher's) saying that Howell was in fact in a special education class could have helped Howell's case, but it is not enough to show prejudice given the deference owed to the OCCA's decision to deny relief. Besides, IQ tests administered to Howell when he was younger showed an IQ closer to 80, not one below 70. In sum, the district court's decision is not open to debate.

Accordingly, we deny Howell's request for a COA on his IAC claims.

### 4. *Sufficiency of the Evidence*

Howell also challenges the sufficiency of the evidence at the *Atkins* trial. He faces an uphill battle to show the district court's assessment of this issue was "debatable or wrong." As the district court correctly noted, "[r]eview of this claim requires layers of deference." *Howell v. Workman*, 2011 WL 5143069, at *5. First, AEDPA deference applies to the OCCA's review—and rejection—of this claim. Thus, the OCCA's factual determinations are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Second, a jury concluded Howell was not mentally retarded, and our review of jury verdicts is "'sharply limited.'" *Boltz v. Mullin*, 415 F.3d 1215, 1232 (10th

-53-

Cir. 2005). We cannot overturn a jury verdict "as long as it is within the bounds of reason." *Id.* Given these layers of deference, Howell would have to present a very convincing case that he is, in fact, mentally retarded—*i.e.*, that the OCCA's and Oklahoma jury's decisions to the contrary were unreasonable—in order to show that the district court's assessment of this claim was "debatable or wrong."

Howell falls far short of meeting that standard. First, he argues that *Atkins* requires a level of scientific certainty that the Oklahoma trial court fell below. But as the district court correctly noted, under *Atkins*, the *states* have "the task of developing appropriate ways to enforce the constitutional restriction [against executing the mentally retarded]." 536 U.S. at 317 (internal quotation marks omitted). The *Atkins* Court did not mandate any particular methodologies for determining mental retardation, instead leaving that question to the states. The district court's rejection of this argument is not open to reasonable debate.

Second, Howell argues that the OCCA's decision to affirm the jury's verdict was an unreasonable determination of the facts and thus should be overturned on federal habeas. But the district court disagreed, finding that, contrary to Howell's claims, "the evidence presented was not conclusive but disputed." *Howell v. Workman*, 2011 WL 5143069, at *8. And under AEDPA deference and the deference owed to jury verdicts, no reasonable jurist could debate the district court's conclusion. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Accordingly, we deny Howell's request for a COA on this ground.

### 5. *Other Errors*

For his last ground, Howell incorporates by reference briefing and arguments for "all remaining issues not already briefed in this application, including Claims 1, 3, 4, 5, 6, 7, 8, 9, 13, 14, 18, and 19."  Aplt. COA Br. at 34. But "incorporation by reference is not permitted in appellate materials in this circuit."  *Young v. Addison*, 490 F. App'x 960, 964 (10th Cir. 2012) (citing 10th Cir. R. 28.4).  "Thus we should not consider arguments [Howell] made in state and district court that he attempts to incorporate into his appellate brief."  *Id.*; *see also Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) ("arguments not set forth fully in the opening brief are waived"); *cf.* Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . the argument, which must contain: appellant's contentions and the reasons for them . . . .").

Accordingly, these arguments will not be addressed, and we deny Howell's request for a COA on these claims.

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief for Howell's conviction and sentence, and we DENY Howell's motion to reconsider our denial of a COA on issues arising from his *Atkins* trial in case number 12-6014 and DISMISS that appeal.