LUCERO, Circuit Judge,
dissenting.
Although my colleagues in the majority state they would be inclined to grant habe-as relief had this case come to us on de novo review, they hold that they are compelled to affirm under the highly deferential standard of review applicable to 28 U.S.C. § 2254 claims. (Majority Op. 1229-30.) The majority notes that the question of whether the KCOA reached an objectively unreasonable decision as to prejudice is a close one. (Id. at 1227.) I agree the question is close, but conclude upon thorough consideration of the record that the KCOA’s treatment of the prejudice issue crossed the line from incorrect to unreasonable. Therefore, I must respectfully dissent.
I agree with my colleagues that the trial attorney’s “failure in this case to obtain the child’s medical records plainly fell below an objective standard of reasonableness.” (Id. at 1224 n. 8.) Frost testified that he instructed his attorney to track down records that would contradict important testimony from the victim’s mother, and an investigator testified that she was able to obtain those records in about an hour. As my colleagues note, it has long been clearly established that counsel “has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To prevail on an ineffective assistance claim, however, Frost must also show that his attorney’s deficient performance caused prejudice. Id. To do so, he must establish “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. I recognize, of course, the considerable deference due to the decision of the KCOA pursuant to the Antiterrorism and Effective Death Penalty Act of 1996. See, e.g., Howell v. Trammell, 728 F.3d 1202, 1212-13 (10th Cir.2013). But “[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Given the centrality of the issue addressed by the medical records that counsel failed to obtain and the potentially devastating effect those records would have had on the prosecution’s case, I consider the KCOA’s conclusion that counsel’s failure was nonprejudicial to be unreasonable.
Frost was convicted of aggravated indecent liberties with a child. As the KCOA dissent highlighted, “one objective fact seemed to corroborate both the mother’s testimony and that of the child: his problem of soiling his pants began only after he had moved in with Frost and, thus, presumably in response to Frost’s criminal abuse.” Frost, 2009 WL 2371007, at *13 (emphasis added). It is no stretch to characterize the correlation of the victim’s en- *1234 copresis and his contact with Frost as the central theme of the trial. The issue was discussed by both the prosecutor and the defense attorney in their opening statements. Seven of the nine witnesses who appeared at trial provided testimony on the victim’s encopresis, many of them at great length. And both attorneys addressed the issue in their closing arguments. The prosecution told the jury that “[y]ou should find it very, very interesting that the only time that these accidents started happening, the only time they happened, was when the defendant had direct contact with [the child] and when the defendant reinitiated contact with his mother that [the child] was aware of.” As Judge Leben explained in dissent, however, “[t]he medical records would have provided objective evidence that the child had had this same problem before any acquaintance with Frost.” Id.
Moreover, the medical records would have provided an extremely valuable avenue of impeachment. As the majority acknowledges, the KCOA’s decision completely failed to address the impact of the records on the credibility of the child’s mother. (Majority Op. 1228-29.) She testified repeatedly and emphatically that the child had not suffered similar accidents before the events relevant to the trial:
Q Okay. Did [the child] ever start having these accidents before you moved in with the defendant?
A No.
Q Did you — could you recall ever him having any accidents like this? For example, after you told him that his biological father and he are not going to have any contact did he ever—
A No.
Q Did he ever start having these accidents any of the other times that you have had to uproot your family and move?
A No.
Q Did he ever have these accidents after your family unit split up from six, two adults with four children, to two separate families of one adult and two children?
A No, he never did.
The KCOA unreasonably failed to consider the medical records’ effect on the credibility of the mother. Combined with the court’s other errors — including those noted by my colleagues, (id. at 1229), the KCOA’s unreasonable analysis resulted in an unreasonable conclusion.
I agree with the majority that the records had less potential to impeach the victim. (Id. at 1228-29.) However, Frost elicited significant testimony suggesting that a mother might put “ideas in [the child’s] head” and that a child’s testimony could be “taint[ed]” by hearing his mother’s conversations. A forensic psychiatrist testified that a child “may want to please the mother. He may pick up things that the mother is saying and repeat those.” Trial evidence suggested that the child had trouble verbalizing details of the alleged abuse when his mother was not present. One witness noted that the victim “turned and looked at his mother” when asked about the abuse and a therapist stated in her report that the child “deferred to his mother for answers regarding abuse.” Thus, evidence that the mother had lied on the stand may have reflected on the child’s testimony and the prosecution’s entire case.
I respect my colleagues’ view on this difficult issue; the AEDPA “standard does not require all reasonable jurists to agree that the state court was unreasonable.” House v. Hatch, 527 F.3d 1010, 1019 (10th Cir.2008). However, Frost presents more than simply a strong case for retrial with the benefit of the previously undiscovered medical records. He has shown that the majority decision of the KCOA was unrea *1235 sonable. Frost was denied protections guaranteed by the Constitution. I would remand to the district court with directions to grant the writ.